James M. WOODS *v.* EMPLOYMENT SECURITY
DIVISION, ARKANSAS DEPARTMENT OF
LABOR, Charles L. DANIELS, Director, and
ARKANSAS WASTE DISPOSAL

CA 79-269                               599 S.W. 2d 435
Court of Appeals of Arkansas
Opinion delivered May 14, 1980
Released for publication June 4, 1980

*Jones & Tiller*, by: *Marquis E. Jones*, for appellant.

*Thelma M. Lorenzo*, for appellees.

MARIAN F. PENIX, Judge. Claimant James M. Woods
worked from April 14, 1973 through June 7, 1979 for Arkansas Waste Disposal. He applied for unemployment benefits
which were denied under Section 5(b)(1) of the Employment
Security Law. Claimant appealed the Agency's decision. The
Appeal Tribunal modified the Agency's decision and found
Woods was not discharged from his work but voluntarily quit
without good cause connected with the work within the
meaning of Section 5(a) of the Employment Security Law.
The Board of Review affirmed the Appeal Tribunal's decision. Woods appeals.

Woods contends he is entitled to unemployment benefits resulting from a personal emergency. His testimony was that the employer company was dumping chemicals into the land-fill where he worked. He testified the chemicals made him ill causing him to leave the job site. He stated further he had been on leave from work a couple of times resulting in his recovery. He stated he left the job site the morning of June 7, 1979, because he felt "fainty, weak, sick again". Woods testified he left the job site because some of the chemicals he was burying splashed upon him causing him to burn. He testified there is no facility at the landfill where an employee can wash. He stated he told the clerk Bradley he was leaving because "the stuff was burning me pretty bad". The evidence showed the nearest water supply was a mile or mile and a half. Woods stated he had to get off his clothes as quickly as possible. He said he didn't mention to anyone on the job site because there was no one there who was his boss.

When he left the job site he went to the office to see his boss. Not finding his boss, Ralph Holland, he met James Herron, foreman. Woods contends Herron asked him for his keys. Woods alleges he tried for three days to locate his boss Holland. Finally when he reached him by phone Holland informed him he no longer had a job. Woods contends he went looking for his boss to tell him about his illness and not to quit his job.

Woods' employer contends Woods quit. He also contends an OSHA inspection had found the land fill safe.

*Sec. 5(a) of the Employment Security Act* provides:

An individual shall be disqualified for benefits if he voluntarily and without good cause connected with the work, left his last work . . . Provided no individual shall be disqualified under this subsection if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification; or, if after making reasonable efforts to preserve his job rights, he

left his last work because of his illness, injury or disability.

Our question is whether the decision of the Board of Review that Woods voluntarily left his last employment without good cause connected with the work is supported by substantial evidence. We must also determine whether Woods left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification as described in Sec. 5(a) supra.

The employer's manager, Ralph Holland, testified Woods walked off and quit. Holland stated Woods told Bradley, the clerk at the landfill shack, he was fed up with the landfill, was quitting and punching out and going to the office to turn in his keys. Bradley reported to Holland he told Woods he "better just cool down and not quit your job". Woods replied "naw, I'm leaving". Holland testified further Woods hunted up his supervisor, James Herron, said he was through, gave Herron his keys of his own accord and left. Three days later Woods called Holland and said he had changed his mind and didn't want to quit. Holland told Woods "it's too late, you've already quit".

From the evidence we find Woods was forced to leave his job to protect his health in that some chemical had splashed on his body and was burning his skin. He was not near health facilities — he had to leave for personal care. When Woods went seeking his boss someone else asked for his keys.

Woods has made a prima facie case. The only evidence offered by appellee employer, Ralph Holland, is hearsay provided by Bradley and Herron. We recognize hearsay to be admissible in hearings before administrative tribunals, but we find hearsay alone not to be substantial evidence.

We are aware a decision of the Board of Review must be affirmed if we find substantial evidence to support it. However, in this case we cannot find substantial evidence to support a determination Woods is disqualified. We hold Woods is not disqualified as provided in Sec. 5(a) supra.

Reversed and remanded.

Newbern, J., concurs.

David Newbern, Judge, concurring. I agree with the result, but I take issue with that part of the majority opinion which seems to make findings of fact. For example, the opinion says:

> From the evidence we find Woods was forced to leave his job to protect his health in that some chemical had splashed on his body and was burning his skin. He was not near health facilities — he had to leave for personal care. When Woods went seeking his boss someone else asked for his keys.

Of course, this court does not hear this appeal de novo. We do not make factual determinations, and I believe we should limit ourselves to saying simply there was not substantial evidence in the record to support the board's decision.

From what we, from this vantage point, have learned of the process which brings employment security benefits appeals to us, I suspect this decision will work a radical change. No longer will an employer be able to use the testimony of a company president or personnel manager who has only second hand knowledge to refute the testimony of an employee with respect to the circumstances surrounding his departure from a job. I find this change to be important and salutary.