THE FIRST NATIONAL BANK OF PARIS
et al *v.* PEOPLES SECURITY BANK

CA 80-510                    614 S.W. 2d 521

Court of Appeals of Arkansas
Opinion delivered April 29, 1981

*C. Richard Lippard* and *Wright, Lindsey & Jennings*, for appellants.

*Hermann Ivester*, for appellee.

GEORGE K. CRACRAFT, Judge. In March of 1979 the prospective incorporators of appellee, Peoples Security Bank, filed with the Arkansas State Banking Board their petition for a charter for a new bank to be located in the City of Paris in Logan County. Formal objections were filed by American State Bank at Charleston, and the appellants, Logan County Bank at Scranton, the First National Bank at Paris and Citizens Bank of Booneville. After a lengthy hearing the Board denied the petition, finding that there did not exist a public necessity and need for a new bank in Paris. The incorporators of Peoples Security Bank appealed that determination to the Circuit Court of Logan County. The circuit court reversed the determination of the Board, finding that there was not substantial evidence to support the finding of the Board and remanded the cause with directions that a charter be issued.

The appellant banks submit by this appeal that the trial court erred in its findings; that there was substantial evidence to support the finding of the Board and that the Board had not acted arbitrarily or abused its discretion in denying the application for a charter. We agree.

Ark. Stat. Ann. § 67-303.1 (Repl. 1980) which sets out

the prerequisite to charter approval by the Banking Board is, in pertinent part, as follows:

> If the Commissioner and the State Banking Board are satisfied that the persons named as stockholders have the confidence of the community, are financially able to discharge the obligation resting upon the stockholders under any provisions of this act, that the requisite capital has been in good faith subscribed, that a majority of the stockholders are residents of the state, that there exists a public necessity of the business of the community in which it is sought to establish the same, and that a consideration has been given to these factors:

> (1) The adequacy of the capital structure of the proposed bank, its future earning prospect, the general character of its management, the convenience and need of the community to be served and whether or not its proposed corporate powers are consistent with applicable state banking laws. ... (A certificate of incorporation may issue.)

This section requires that all of the listed criteria be established to the satisfaction of the Board. Failure to thus establish any one or more of them prohibits the approval of the proposed charter. In its findings the Board affirmatively found that the stockholders had the confidence of the community and were financially able to discharge the obligations resting on stockholders; that the requisite capital had been subscribed in good faith and that a majority of the stockholders were residents of the state. As to the last of these required criteria the Board found:

> (16) There does not exist a public necessity in the community for the business of the applicant.

This section requires that the Board, in reaching its determination, consider specified factors:

> (1) The adequacy of the capital structure of the proposed bank. In this instance the Board did find the capital structure to be adequate,

(2) The proposed bank's future earnings prospect. The Board found on conflicting evidence that while the applicant had projected that the proposed bank would be economically successful and make a profit in the second or third year, its projections were based on a total bank deposit growth which did not materialize; on an unrealistic estimated cost of funds (6%); and an unrealistic estimate as to the ratio of time to demand deposits. In Finding of Fact Fifteen, the Board found:

> Under current economic conditions the applicant's future earning prospects and its chances for a successful and sound operation are not good.

(3) The general character of its management. The Board specifically found that none of the proposed directors had any significant banking experience. The proposed chief executive officer was age twenty-seven and a half years, had been in the banking business since 1973 at four different locations. It did find, however, that the general character of the proposed bank management was acceptable.

(4) The convenience and needs of the community to be served. The Board specifically found that there were seven banking institutions operating in the twenty-five mile radius of the proposed site; that there was competition for deposits and loans within the service area from savings and loan associations and production credit associations, and that the applicant did not propose to provide or offer any service which was not presently being offered by existing institutions. It further found that the community's legitimate credit and banking needs were being adequately taken care of by existing institutions. The Board specifically found from conflicting evidence before it that the need, from a public standpoint, for the proposed institution had not been shown. There was also evidence from which the Board made specific findings that the area proposed to be served had an average population increase of about forty-nine families per year, that Logan County had less than one percent of the state's population and was experiencing slow economic growth both in industry and employment. The labor market area had an unemployment rate higher than that of the state

as a whole. It also found that the county in which the bank was proposed to be located had a lower income and an older population than the rest of the state. There was evidence that a similar application for a federal charter had been denied by the comptroller the year before.

In its opinion reversing the Board's decision, the trial court relied upon the fact that though economic growth was found by the Board to be slow, there was in fact some growth. It also commented on the finding of the Board that in order for a second bank to survive it would have to draw significant deposits from existing institutions and that the Logan County Bank would be "substantially harmed." The circuit court found that substantial harm to existing institutions was not a prescribed criteria under Ark. Stat. Ann. § 67-303.1 (Repl. 1980) and that he did not find substantial evidence to support that finding in any event. He based that finding on evidence as to deposit growth in existing banks and statistical data indicating that the appellant banks ranked very high on lists of most profitable banks of comparable size. While harm to existing banks may not be a statutory criterion, it is a factor which the Board may properly consider along with all other evidence before it in determining whether the requirements of the act have been established. The evidence regarding the ranking of these banks as to profits was fully presented to and considered by the Board. There was also evidence tending to show that the increase in deposits was affected by the inflation factor and, that in present economic conditions, deposit growth was not "the bottom line."

The decision of an administrative board will be upheld if supported by substantial evidence and not arbitrary, capricious or characterized as an abuse of discretion. *Independence Savings & Loan Assn.* v. *Citizens Federal Savings & Loan Assn.*, 265 Ark. 203, 577 S.W. 2d 390; *Citizens Bank* v. *Arkansas State Banking Board*, 271 Ark. 703, 610 S.W. 2d 257 (1981). The "substantial evidence" rule in this type case requires a review of the entire record and not merely a review of the evidence supporting the Board. *Citizens Bank* v. *Arkansas State Banking Board*, supra. In support of their position, as they did before the trial court, appellant banks

point out conflicting evidence which was more favorable to their position and argue the question of credibility and weight of that evidence.

On several occasions in recent years our court has reaffirmed its earlier declarations that the questions of credibility of witnesses and weight to be accorded evidence presented to the Board is a prerogative of the Board and not of the reviewing court, and that courts rely on their findings because they are better equipped by specialization, insight and experience in the matters referred to them. *Independence Savings & Loan Assn.* v. *Citizens Federal Savings & Loan Assn.,* supra; *Citizens Bank* v. *Arkansas State Banking Board*, supra.

The reviewing court may not displace the Board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it *de novo*. The reviewing court may not set aside a Board's decision unless it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial. *Northwest Savings & Loan Assn.* v. *Fayetteville Savings & Loan Assn.*, 262 Ark. 840, 562 S.W. 2d 49.

When the entire record is reviewed and not merely that testimony supporting the Board's conclusion, we cannot say that the finding that there was no public necessity for a new bank in the City of Paris is unsupported by substantial evidence. The question of whether the Board's action was arbitrary or capricious is a narrow one and more restrictive than the substantial evidence test. It is only applicable where the Board's decision is not supported on any rational basis and made in disregard of the facts and circumstances. *Arkadelphia Federal Savings & Loan Assn.* v. *Midsouth Savings & Loan Assn.*, 265 Ark. 860, 581 S.W. 2d 345.

Reversed and remanded.