Mac CARDER, Director of Alcoholic Beverage Control
Division et al *v.* Clifford E. HEMSTOCK

CA 81-317                                  633 S.W.2d 384

Court of Appeals of Arkansas
Opinion delivered May 26, 1982

116

*Donald R. Bennett* and *Marshall N. Carlisle,* for appellants.

*Evans, Ludwig & Evans,* by: *James E. Evans, Jr.,* for appellee.

GEORGE K. CRACRAFT, Judge. The appellants, the Director and members of the Arkansas Alcoholic Beverage Control Board, bring this appeal from an order of the Circuit Court of Washington County which reversed appellants' decision denying appellee, Clifford E. Hemstock, a retail liquor permit.

Appellee's application was first rejected by the Director. On appeal the Alcoholic Beverage Control Board made certain findings and again denied the application. Having reviewed the case on appeal to it pursuant to the Administrative Procedure Act, the Washington County Circuit Court remanded the matter to the Board, directing that it make specific findings on certain issues. On remand the Board heard additional evidence and filed its supplemental findings with the circuit court, reaffirming its decision not to issue the permit. After its second review the circuit court held that the findings and conclusions of the Board were not supported by substantial evidence and that its denial of the permit was arbitrary and capricious. The circuit court ordered issuance of the permit.

Ark. Stat. Ann. § 48-301 (Repl. 1977) declares it to be the public policy of this state that the number of permits for the sale of alcoholic beverages be restricted. It empowers the Director of the ABC to determine, in carrying out the express public policy, whether public convenience and advantage will be afforded by the increase or decrease of permits. The

Director and the Board are given broad discretionary powers to decide the number of permits and to issue them only when it is determined that public convenience and advantage would be promoted.

The rules governing judicial review of decisions of administrative agencies are settled and are the same for both the circuit and appellate court. This review is limited in scope and such decisions will be upheld if supported by substantial evidence and not arbitrary, capricious or characterized as an abuse of discretion. *First National Bank of Paris* v. *Peoples Security Bank,* 1 Ark. App. 224, 614 S.W.2d 521 (1981); *Snyder* v. *Alcoholic Beverage Control Board,* 1 Ark. App. 92, 613 S.W.2d 126 (1981).

The substantial evidence rule applicable to these cases requires a review of the entire record and not merely that evidence which supports the Board's decision. Substantial evidence is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Satterfield* v. *Mathews,* 483 F. Supp. 20 (1979). Although hearsay evidence is admissible in hearings before administrative bodies, hearsay alone is not substantial evidence. *Woods* v. *Emp. Sec. Div.,* 269 Ark. 613, 599 S.W.2d 435 (Ark. App. 1980). On numerous occasions in recent years our court has reaffirmed its earlier declarations that the questions of credibility of witnesses and weight to be accorded evidence presented to a board is the prerogative of the board and not of the reviewing court, and that courts must rely on their findings because they are better equipped by specialization, insight and experience in matters referred to them. The reviewing court may not displace the Board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it *de novo.* The reviewing court may not set aside a board's decision unless it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial. *First National Bank of Paris* v. *Peoples Bank,* supra.

The question of whether a board's action is arbitrary and capricious is a narrow one, more restricted than the

substantial evidence test. To set aside an agency decision on that basis, it must be found to have been willful and unreasoning and in disregard of the facts and circumstances of the case. This standard applies only where the board's action was unreasoned; its decision was not supported by any reasonable basis, and was made in willful disregard of the facts and circumstances. *Arkadelphia Federal Savings & Loan Ass'n* v. *Mid-South Savings & Loan Ass'n,* 265 Ark. 860, 581 S.W.2d 345 (1979); *First National Bank of Paris* v. *Peoples Security Bank,* supra.

The Board found from the evidence submitted that there was significant opposition to the permit by adjacent property owners, and that there was significant opposition from area public officials. It found that placing the outlet at this location would increase the traffic hazard and traffic burden which already exists at the intersection and that police protection would be difficult to provide due to limited resources at the sheriff's office which had jurisdiction over that area. It further found that it was charged with the duty of restricting the number of permits and that the evidence before the Board led to the conclusion that the present number of eight permits for the City of Springdale is sufficient and that the public convenience and advantage would not be served by the issuance of an additional permit at this time at that location.

The trial court first held that the Board's finding that the location selected was a hazardous intersection and that an outlet there would increase that hazard was not supported by substantial evidence. The sheriff and two of his deputies offered testimony that due to its particular layout the intersection was dangerous and that a liquor store at that site would tend to increase the existing hazard. Two residents of the area gave testimony in corroboration of that fact and testified about fatal accidents which had occurred at the intersection in the past. While no testimony to the contrary was offered, on cross-examination it was sought to diminish the effectiveness of this testimony, particularly of the two residents, by questioning their opportunity for observation and actual knowledge of the facts about which they testified.

The prosecuting attorney in his written statement corroborated the sheriff's opinion that "this location would be difficult to properly patrol and is a dangerous intersection with one person having been killed there in the past fifteen months by a drunk driver." Other public officials submitted written objections because of the congested condition the store would create. An agent of the Alcoholic Beverage Control Board investigated the application. Contained in his report were statements of several inhabitants of the immediate area that they objected to the location based on the hazardous condition and the number of accidents that had occurred at the intersection. A large number of adjacent landowners petitioned that the permit be denied for the same reason. These hearsay statements are admissible in administrative hearings and may be given such weight as the agency may determine.

The trial court, declaring that the finding of the Board in this regard was not supported by substantial evidence, observed that all highway intersections create a danger to traffic and that there was no evidence that this intersection was substantially different from other intersections in the area. Police officers testified that the hazards created here were the result of the peculiar layout of the intersection. The trial court further commented that there was no evidence of visual observation or steep elevations on the approaches and that the finding that accidents have occurred at this intersection did not indicate that any more accidents occurred here than at similar intersections within the city and that the Board may have attached too much weight to the testimony of the two residents.

While these might have been permissible findings in a trial *de novo,* we conclude that in its reversal of these administrative determinations the trial court substituted its judgment and discretion in weighing the evidence for that of the agency. Judging both the credibility of the witnesses and the proper weight to be accorded evidence presented to the Board is within the Board's domain. *Northwest S & L Ass'n* v. *Fayetteville S & L Ass'n,* 262 Ark. 840, 562 S.W.2d 40 (1978).

The trial court also held that the Board's finding that the area's economy did not justify the liquor permit ignored the fact that Springdale had phenomenal economic and population growth since 1969, the date the last permit was issued in that city. He found that due to that growth the failure to grant a permit during a twelve year period without finding of adverse effect on existing outlets was itself arbitrary and capricious and tended to create an unreasonable monopoly of the existing outlets. Again we think the trial court invaded the prerogative of the Board. The Board in its findings recognized the legislative mandate that it be charged with the duty of restricting the number of permits under the Act. The Board was not required to find that the issuance of a new permit would have an adverse effect on any existing permit; it was required to find only whether the issuance of the additional permit in this area would "promote the public convenience and advantage." There was no testimony that the existing outlets did not adequately serve the public need or that any of the evils of monopolistic control existed in the area. Nor can we agree with the trial court that the mere fact that no permits were issued in the City of Springdale during a period of twelve years was in and of itself arbitrary. No evidence has been pointed out to us which might indicate that the Board had systematically denied applications in the area or even that such applications had been made.

The words "public convenience and advantage" are not defined in the Act and we find no cases in which our court has construed them. We conclude that these words should not be restricted to a colloquial sense as synonymous with "handy or easy of access" but construed in that sense which connotes suitable and fitting to supply the public needs to the public advantage. We further conclude that even if the Board could or should have found that due to economic expansion an additional outlet was desirable, it was not required to grant this particular application for this specific location since the Board found the location would disadvantage not only those utilizing the facility but the general public.

The Board further found that police protection would

be difficult to provide at the location mentioned in the application. This outlet was 400 feet outside the Springdale city limits and under the sole jurisdiction of the sheriff's department. It was the sheriff's testimony that, while adequate protection might be afforded in daylight, at night his patrol cars were assigned to the outlying areas in the county and no other protection was available. He noted that this type of business was usually open until midnight. He and his deputies testified that due to the limited manpower and resources of the department it would be difficult to offer protection and surveillance of the proposed premises during these late hours. The sheriff objected to the issuance of the permit for that reason, adding that no other police department would respond to a call to that location and that he had two less patrol cars now than at the time of the initial board hearing. The Board recognized that liquor and convenience stores both pose security problems, particularly at night. As security and public safety are factors to be considered in determining whether public convenience and advantage are to be promoted the Board properly considered this testimony.

The trial court found this testimony insubstantial since the sheriff could "always use more cars" and there was no finding that the loss of two patrol cars would cause a recall of any retail permits already in existence. Again we think the trial judge invaded the province of the Board. It was for the Board to determine whether the public security and safety would be adequately protected at this particular location and there was substantial evidence to support a finding that adequate protection would not be available. The trial court also apparently lost sight of the fact that the hearing was not to determine the wisdom of permits issued previously but only whether the public convenience and advantage would be supported by the issuance of a new one in this particular location.

The trial court, citing *Snyder*, supra, concluded that the fact that a number of public officials and adjacent landowners opposed the issuance of the permit was not conclusive. We did so state in *Snyder*, but we further held that the reasons why those persons opposed or supported the

permit application might be "very significant." Here, unlike in *Snyder,* those opposing the application did give their reasons. Written statements from public officials and a petition signed by a large number of persons were received in evidence. The stated reasons for opposing the application in these written documents were substantially the same as those given by the sheriff, his two deputies and the two local residents in their sworn testimony. While hearsay standing alone is not substantial evidence it may be considered by the agency in reaching its determination if supportive of other non-hearsay evidence. *Woods* v. *Emp. Sec. Div.,* supra. The weight to be given such evidence is for the Board to determine.

We conclude that the findings and order of the Alcoholic Beverage Control Board are supported by substantial evidence and that the trial court erred in not so holding. The case is reversed and remanded to the circuit court with directions to enter an order affirming the determination of the Board.

COOPER, J., concurs.