Jack FOUCH *v.* STATE of Arkansas, Alcoholic
Beverage Control Division

CA 83-38                          662 S.W.2d 181

Court of Appeals of Arkansas
Division II
Opinion delivered December 7, 1983
[Rehearing denied January 11, 1984.]

*Judith C. Strother,* for appellant.

*Treeca J. Dyer,* for appellee.

TOM GLAZE, Judge. This appeal is from the circuit court's affirmance of the Alcoholic Beverage Control (ABC) Board's denial of appellant's application for a retail liquor permit to operate a package store in Mountain Home,

Arkansas. The appellant, Jack Fouch, applied for a permit on June 13, 1981. The administrator denied the application on July 29, 1981. Fouch appealed to the ABC Board; hearings were held before the Board on September 17 and October 21, 1981. Pursuant to Ark. Stat. Ann. § 5-713 (Supp. 1981), Fouch appealed to the Pulaski County Circuit Court, alleging the Board's decision was not suported by substantial evidence. On September 28, 1982, the circuit court ruled in favor of the ABC Board. Fouch appeals that decision and raises three points for reversal:

1. The circuit court erred in finding that the ABC Board's denial of the retail liquor permit was related to "public convenience and advantage."

2. The circuit court erred in finding substantial evidence in the record of the proceedings of the ABC Board to support its denial of the applied for permit.

3. The circuit court erred in finding that the decision was not affected by errors of law and that the decision was not made upon unlawful procedures.

We find merit in appellant's first two points; therefore, we need not reach the third.

The rules governing judicial review of decisions of administrative agencies are settled and are the same for both the circuit and appellate courts. This review is limited in scope; such decisions will be upheld if supported by substantial evidence and not arbitrary, capricious or characterized by an abuse of discretion. *Carder* v. *Hemstock*, 5 Ark. App. 115, 633 S.W.2d 384 (1982). The substantial evidence rule applicable to these cases requires a review of the entire record and not merely the evidence which supports the Board's decision. *Id.; Snyder* v. *Alcoholic Beverage Control Board*, 1 Ark. App. 92, 613 S.W.2d 126 (1981). Substantial evidence is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carder* v. *Hemstock, supra*. The reviewing court may not displace the Board's choice between two fairly conflicting views even though the

court might have made a different choice had the matter been before it *de novo*. The reviewing court may not set aside a board's decision unless it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial. *Id.*

The jurisdiction of the court and the standard of review are set out in the Administrative Procedure Act, at Ark. Stat. Ann. § 5-713 (h) (Supp. 1981), under which this court may reverse or modify an agency decision if substantial rights of the petitioner have been prejudiced because the administrative findings are not supported by substantial evidence. The Administrative Procedure Act also requires that an agency set out in writing or state in the record its final decision or order. In addition, the Act provides:

A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings . . . .

Ark. Stat. Ann. § 5-710 (Repl. 1976).

We have reviewed the extensive record in this case, which includes the transcripts of two hearings before the ABC Board with numerous exhibits submitted by Fouch, the Board, and intervenor Kaut White. We have considered each of the Board's eight findings in light of the evidence and cannot conscientiously find from our review that the evidence is substantial to deny appellant's application for a license. The eight findings of the Board are set out below.

1. That there are presently sixteen (16) liquor outlets in Baxter County, and testimony taken at the hearing indicated that eight (8) of those outlets were in the Mountain Home area.

The Board's first finding is misleading and erroneous. The Board's figures do not accurately reflect the number of licensees in the area appellant applied to serve. Fouch applied for a license to operate a package store in an existing

building on Highway 62 East in Mountain Home. The evidence shows that Mountain Home presently has only two *retail* outlets, Fiesta Liquor and 62 East Package Store. Of the remaining six in the Mountain Home area, only one is a retail outlet, Warehouse Liquors. The others are clubs or restaurants licensed to sell beer and/or wine. The evidence reflected that Fiesta Liquor is poorly stocked, with an inventory of only about $10,000, that Warehouse Liquor sells primarily to clubs and restaurants and that 62 East Package Store, owned by intervenor Kaut White, does the bulk of the business in the area. By White's own testimony, he sells from $700,000 to $1,000,000 in merchandise each year.

> 2. That there are approximately 20,000 residents in the Mountain Home area, and the existing eight (8) retail liquor outlets are sufficient to serve the needs of that area.

The evidence showed that, although the official population of Mountain Home is only 8,020, the city has 20,000 residents year-round and greater numbers of visitors on a continuous basis. The city is a major tourist area for the state and a regional shopping area for north Arkansas. Testimony indicated the three major motels have 130,000 customers a year and significant numbers of visitors travel to Mountain Home on holiday weekends. Mayor Ron Pierce testified that Mountain Home has 40,000 to 50,000 residents four or five months a year and that float trips are now a year-round, rather than a seasonal business.

As we have already pointed out, the record does not reflect eight *retail* liquor outlets in the Mountain Home area. Several people testified they are unable to purchase a variety of wines and other alcoholic items in the liquor stores in town. Witnesses, as well as appellant, named specific brands the appellant had stocked in his Missouri store and plans to stock in his Mountain Home store which are not available presently in either store in town.

The only evidence to support the Board's finding that the present outlets are sufficient to serve the needs of the area

came from James Dollins, a liquor salesman and former ABC enforcement officer. Dollins opined that Mountain Home is "pretty well supplied" with liquor stores. He called both Warehouse Liquor and 62 East Liquor Store "heavily stocked" and Fiesta "medium, if even medium." We cannot find that Dollins' testimony alone is substantial evidence to support the Board's Finding #2. Dollins' remarks were conclusory; he gave no basis for his comparisons, nor did he indicate what he meant by the use of such terms as "pretty well supplied," "heavily stocked," or "medium, if even medium."

The appellant subpoenaed the owners of the other liquor stores in town and requested that their inventory records be admitted into evidence, but the Board found the inventories irrelevant to the granting or denial of appellant's license. Of course, such inventory records would have shown how well the liquor stores in the area were stocked and would bear on the question of whether these stores sufficiently served the area's needs. Even without this information, appellant offered evidence indicating the existing stores are *not* serving the needs of the area because they do not stock items in quantity or quality that the citizens desire. This evidence was unrebutted except for Dollins' unsupported conclusions. The record simply does not support that (1) there are eight retail outlets in the area, and (2) that existing outlets are sufficient to meet the needs of the area.

> 3. That the site of the proposed outlet is at the intersection of Highway 62 East and Cardinal Street in Mountain Home, which is a heavily travelled intersection which has no street lights and a retail liquor outlet at that location would greatly increase an existing traffic problem.

We do not agree with this finding. Again, the Board has stated a conclusion without facts to substantiate it. We do agree that the evidence indicated the intersection is heavily travelled. In fact, one of appellant's strongest contentions is that his proposed store will serve the public convenience and advantage *because* of its location. We are unable to find any

testimony relating to street lights; the evidence is contrary to the Board's finding because street lights are obvious in the photographs of the proposed site which are a part of the record.

The fact that "a retail liquor outlet at that location would greatly increase an existing traffic problem" is a conclusion that is not substantiated by the record. Police Chief Doak testified a liquor store at that intersection would not create any more of a traffic problem than a restaurant or anything else would cause. Mayor Pierce testified that *all* of Highway 62 — including that part which runs in front of the 62 East Package Store — creates traffic problems, because it is the center of business in the town. He opined that appellant's would be the best liquor store location in town. He pointed out the building is away from churches and is in a high-density, highly-travelled area. He pointed out that the location has ample parking and has exits onto both Highway 62 and Cardinal Drive.

Only two witnesses testified in support of the Board's finding of an existing traffic problem. Representative Ed Gilbert opposed Fouch's application based, in part, upon the fact that Highway 62, a two-lane highway, is overloaded with businesses and traffic. He could not testify to a personal knowledge of any accidents at that location, but he stated that the "possibilities" for having accidents there certainly exist. Sheriff Joe Edmonds testified that the location was at a bad intersection with a large amount of traffic and a high rate of accidents. He noted *one occasion* when his Department had been summoned to assist the City police when a van overturned near that intersection. On the traffic issue, we find Gilbert's and Edmonds' testimonies largely speculative and uncompelling when compared with the overwhelming evidence to the contrary.

A number of witnesses testified that the location would be ideal. Mr. Bill Waters, Councilman, called the traffic "the finest in the area." Mrs. Fran Lowery, owner of a resort on the White River, testified that she made three to four trips a day to the shopping center and had never seen an accident there. The ABC Enforcement Officer who inspected the site

found no traffic hazard. Mrs. Fouch, the applicant's wife, researched files for accidents in Mountain Home for the one-year period prior to the hearing, and she found that no accidents had occurred at that shopping center.

> 4. That testimony at the hearing indicated that two (2) or three (3) of the existing retail liquor outlets in the Mountain Home area are having problems producing enough income to remain open and that another liquor outlet in the area would have an adverse economic impact on the marginal outlets that are presently operating.

This finding is irrelevant to the granting or denial of additional licenses. In the first place, the Board provided no basis for its finding by naming particular businesses or by showing its source for this information. Secondly, the statute provides for the ABC Board to promote *public* convenience and advantage in issuing permits, not to protect the interests of the owners who are presently licensed.

Even if the financial status of existing stores was a relevant factor for the Board to consider in granting or denying new permits, they apparently did not consider it relevant here. Appellant subpoenaed the other two store owners in Mountain Home and requested that they provide him with records of their inventories. The owners did not produce the requested records. Kaut White testified at the hearing before the ABC Board that his records were his private business which he would not produce. The ABC Board refused to enforce the subpoenas and ruled that the information in the inventories was irrelevant.

> 5. That another retail outlet in the Mountain Home area would tend to create additional law enforcement problems for the Mountain Home City Police and the Baxter County Sheriff's Department, as indicated by their testimony and letters in opposition, and would possibly force existing outlets, who would undoubtedly lose business, to resort to illegal sales in order to remain in business.

The first part of this finding which relates to law enforcement problems is certainly relevant to the Board's determination. However, the evidence does not bear out that portion of the finding. Police Chief Paul Doak testified by deposition and wrote letters which were included in the record. Although he has been the primary law enforcement officer for Mountain Home for about six years, he did not even allude to additional law enforcement problems resulting from granting appellant's application. He discussed only a potential for additional traffic problems, but stated that a liquor store at that location would create no more traffic hazard than a restaurant or any other business would create.

Sheriff Joe Edmonds testified by deposition that he and his department would experience an "additional hardship . . . as far as enforcement goes" if appellant's license were granted, but he gave no basis for his conclusion. He also expressed his belief that too many liquor stores would force some smaller stores out of business and result in sales of intoxicants to minors as the owners competed for business. This testimony is apparently the basis for the latter part of the Board's Finding #5, but such conjecture does not in any way factually support the finding as required by § 5-710, *supra*.

Mayor Pierce testified that he believed problems in Mountain Home resulted, not from liquor purchased in local stores, but from liquor brought into Mountain Home from elsewhere.

6. That the voters of Baxter County continue to be closely divided as to whether they are for or against the sale of alcoholic beverages in the County, as indicated by petitions and letters, both for and against this application, and another retail liquor outlet in Mountain Home, which would certainly create more law enforcement problems in the area, would have impact on the wet/dry issue in Baxter County.

First, we question the relevancy of this finding as it bears on whether or not appellant should be granted a

permit. Even assuming that the finding is relevant, it simply is not supported by the evidence. Evidence was presented to indicate that the voters of Baxter County do not remain "closely divided" on the wet/dry issue. Appellant submitted results of the 1978 vote in two townships when the county voted to sell alcoholic beverages; the vote was 533 for wet and 723 for dry. When the same two townships voted again in 1980, 1,034 voted to stay wet and 657 voted to go dry. According to appellant, these two townships were major dry strongholds in Baxter County, yet the wet vote doubled while the dry vote decreased slightly.

Mayor Pierce testified that in his opinion the citizens of Mountain Home had come to accept the sale of liquor in their community. Both Sheriff Edmonds and Representative Gilbert testified that it was possible that additional retail liquor outlets would have an impact on the wet/dry issue in the next general election, but again neither offered a basis for his speculation.

> 7. That the ABC Division has been mandated by the State Legislature in Arkansas Statutes Annotated, § 48-301, to restrict the number of liquor permits in the State of Arkansas and is further empowered to determine whether the public convenience and advantage would be promoted by issuing any such permit.

In *Syder* v. *Alcoholic Beverage Control Board, supra* at 96, 613 S.W.2d at 128, we said:

> We recognize that the legislature intended that the number of permits in the State of Arkansas should be limited, and that permits should be issued or revoked based on the public convenience and advantage. To carry out the legislative intent and the requirements of the statute the Board must look at factors which directly weigh on the public convenience and advantage.

The statute does not provide a guide for determining whether the public convenience and advantage will be served by granting or denying a license. The Board must

"look at factors which directly weigh on the public convenience and advantage." *Id.*

In the case at bar, the Board set out no findings which related directly to the public convenience and advantage in denying the permit. The Board merely stated a conclusion. On the other hand, appellant presented evidence that the public convenience and advantage would be served by his being granted a permit. For example, appellant testified that he had written his master's thesis in business administration on market survey for a new product. He introduced a market survey which he had prepared to determine the feasibility of his operating a liquor store in Mountain Home at the location in question. His survey showed that Mountain Home serves as a shopping area for much of north Arkansas. In addition, the locale attracts tourists the year-round. The area is growing — the population increased 103 percent from 1970 to 1980, according to the 1980 census. Baxter County was the fastest growing county in the state from 1960 to 1975. Its projected population for 1990 is 45,508, according to a June, 1978 *Arkansas Newsletter.* A recent issue of *Consumer's Digest* names Mountain Home as first on a list of "Ten Best Places to Retire." These figures tend to indicate that the potential exists for Mountain Home to continue its already-expanding growth. None of appellant's evidence was rebutted.

Fouch outlined in detail how he had determined that the liquor stores in Mountain Home do not provide the area with the quantity or quality of alcoholic items available to best serve the public. A number of witnesses testified that they were unable to find the items they wanted in Mountain Home or to find the items that appellant had carried in his store in Missouri. Fouch pointed out the convenience to be derived from his locating in the shopping center. He stated an intent to staff his store to cater to women. Fouch contended that his primary source of business would be those purchasers who continue to drive to the Missouri line to make their purchases.

8. That testimony of opposition [sic] as to particular brands of alcoholic beverages that could not be found

in Mountain Home outlets has no bearing on the issue of whether the public is being adequately served, since there was no showing that the particular brands mentioned were registered for sale within the State by brand registration with the Alcoholic Beverage Control Division; that it appears to be sound business practice that a retailer would stock all brands that were justified by sales volume; that it would be impossible for any one retail liquor outlet in the State to stock even a small percentage of the thousands of different brands and variations of liquor and beer that are registered and authorized for sale in the State.

The availability or nonavailability of items which members of the community desire to purchase could have a bearing on whether the public is being served adequately. Although it may be true from a business standpoint that a retailer will stock all brands justified by sales volume, we find no basis in the record for the Board's conclusion.

Appellee argues that substantial evidence exists to support the action of the Board in denying the appellant's license; yet appellee fails to set out in its brief the facts it claims support the Board's findings. However, appellee does argue that appellant demonstrated a complete disregard for authority (1) by evading service of process when the sheriff's department attempted to serve him with interrogatories and requests for admission at the behest of intervenor Kaut White prior to the hearing below; and (2) by breaking the law when he operated a liquor store in Missouri.

Although it is undisputed that service on Mr. Fouch was not had, Fouch's testimony that he was on a fishing trip in Missouri at the times the deputy attempted to serve him is equally undisputed. The deputy sheriff testified that he "assumed" appellant remained away from home to evade service, but he gave no evidence to support his speculation. Simply put, no evidence supports appellee's assertion that appellant "has no respect for local law enforcement" or that he "attempt[ed] to evade service of process by a Sheriff's deputy in Baxter County."

Appellee also contends that appellant violated the law in two respects when he operated a liquor store on the Missouri side of the Arkansas-Missouri state line. First, appellee argues that appellant admitted that while he operated a liquor store in Missouri, he knowingly sold alcoholic beverages to Arkansas residents who then brought their untaxed liquor back into Arkansas for consumption. Although purchasers who bring untaxed liquor from Missouri into Arkansas violate the laws of this State, appellee cites us to no law appellant violated by his selling it to Arkansas residents.

Second, appellee alleged that appellant's Missouri liquor license had been suspended for unlawful advertising, which would mean that appellant falsely stated on his application for an Arkansas license that he has never been convicted of a violation of any state's laws relating to alcoholic liquors. Appellant was not convicted — nor even charged — with violating Missouri law. David Gohn, President of West Plains (Missouri) Bank, wrote a letter highly recommending Fouch to the ABC Board. Gohn related that because of misrepresentations made to Fouch by his precedessor-in-title of the liquor store, Fouch was in a bad situation with his Missouri store from the very beginning. According to Gohn, the situation degenerated to a point that the bank had to step in to protect its own position as mortgagee. Through foreclosure, the bank took over the store on October 1, 1980, and closed the store on December 6, 1980. On December 22, 1980, the bank received notice of a three-day suspension of the license because of unlawful advertising. By that time, Fouch was not the license-holder at all. Throughout his letter, Gohn was highly complimentary of appellant and the manner in which he operated his business. In addition, Gohn expressed the bank's gratitude to appellant because, after the foreclosure, Fouch protected and liquidated a $65,000 inventory so that the bank experienced no loss. All of the evidence is contrary to the appellee's allegations that appellant is or was a lawbreaker.

In the instant case, the reasons the opponents stated for opposing Fouch's application, and hence the reasons stated

by the ABC Board for denying the application, have no basis in fact, and we find no substantial evidence to support the Board's findings. Therefore, we reverse the decision of the ABC Board and order that Fouch's application for a permit be granted. As we previously indicated, we need not get into questions concerning the procedural and due process problems which appellant raised in his third point for reversal. In finding it unnecessary to discuss those numerous issues, we do not mean to infer that none of them has merit.

Reversed and remanded.

MAYFIELD, C.J., and COOPER, J., agree.