214

Georgette FONTANA and
SUNDOWNERS CLUB, INC. *v.*
Jim GUNTER, Pros. Atty. et al
ALCOHOLIC BEVERAGE
CONTROL BOARD, Intervenor

CA 83-139                                      669 S.W.2d 487

Court of Appeals of Arkansas
Division II
Opinion delivered May 16, 1984

*Honey & Rodgers,* by: *Danny P. Rodgers,* for appellants.

No response by appellee.

*Treeca J. Dyer,* for intervenor.

MELVIN MAYFIELD, Chief Judge. This is an appeal from a decision by the circuit court reversing the Alcoholic Beverage Control Board's grant of a private club permit to the Sundowners Club. Application for the permit was made by the appellant, Georgette Fontana, as managing agent for the club. She was operating a restaurant in Hope, Arkansas, and the permit would authorize the serving of alcoholic beverages to the club members in a portion of the restaurant which the club would lease.

A hearing was held before the director of the ABC Board and the permit was granted. That decision was appealed to the full Board by the prosecuting attorney. Evidence was heard from the applicant and from public officials and private citizens. With one member abstaining, the Board voted unanimously to grant the permit. The prosecuting attorney and the chief of police of Hope then appealed to circuit court, naming the ABC Board as respondents. The court reversed the Board's decision and Mrs. Fontana and Sundowners appealed. The ABC Board was allowed to intervene in this court.

On appeal we review the entire record of the administrative agency and affirm its decision if it is supported by substantial evidence and is not arbitrary, capricious or characterized by an abuse of discretion. *Carder, ABC Director* v. *Hemstock,* 5 Ark. App. 115, 633 S.W.2d 384 (1982); *Citizens Bank* v. *Ark. State Banking Board,* 271 Ark. 703, 610 S.W.2d 257 (1981). Determining whether the Board's decision was arbitrary or capricious involves a limited inquiry into whether it acted with willful and unreasoning disregard of the facts and circumstances of the

case. *Carder, ABC Director* v. *Hemstock, supra, First National Bank of Paris* v. *Peoples Security Bank,* 1 Ark. App. 224, 614 S.W.2d 521 (1981); *Arkadelphia Federal S & L Ass'n* v. *Mid-South S & L Ass'n,* 265 Ark. 860, 581 S.W.2d 345 (1979). Courts rely heavily upon the principle that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures, to determine and analyze underlying issues. *Independence S & L Ass'n* v. *Citizens Fed. S & L Ass'n,* 265 Ark. 203, 577 S.W.2d 390 (1979). A reviewing court may not set aside a Board's decision unless it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial. *First Nat'l Bank of Paris* v. *Peoples Security Bank, supra.*

Mrs. Fontana presented evidence to the Board that she operated the Sundowners Club in Prescott for about seven years and it had recently moved to Hope. The club wanted to serve wine, beer, and mixed drinks with meals. It would not have a bar, and no drinks would be served without a meal. She testified she was currently operating a restaurant called "The Branding Iron" in Hope and had many customers from Hope, Emmett, and Prescott who had expressed a desire to be able to have an alcoholic beverage with their meals.

Hempstead County has a population of about 25,000. All parties agreed that there were four private clubs located in the county. The opponents to the application insisted that this was enough. However, when examined carefully, it becomes clear that the availability of these is limited. According to the evidence, two of the clubs serve blacks predominantly. The other two are the Hope Country Club, which has a $350 initiation fee and a $40 monthly charge, and the VFW Club, which is for veterans only. Therefore, of the four private clubs in the county, only two are available to whites and both of them have obstacles to membership that could prevent many ordinary citizens from joining. In addition, of the four clubs, only the Hope Country Club has a restaurant in conjunction with it, although the other clubs do serve food in the form of sandwiches. The Sundowners Club would be primarily a nice supper club with an

affordable membership fee of $5.00 per year, where the ordinary citizen could get a good meal accompanied by a glass of wine or other alcoholic beverage.

The opponents of the permit did not question Mrs. Fontana's moral or legal qualifications to hold the permit as manager for the club. There were some questions about the club's membership list, and while the list was seven years old, it was evident that the club had more than the 100 members required by Ark. Stat. Ann. § 48-1402(j) (Repl. 1977). The trial judge pointed out that there were only a few Hope residents on the list; however, the restaurant had been located in Hope only a few months at the time the application was filed for the permit.

The primary opposition to the issuance of the permit was based on grounds that four clubs were sufficient to serve the area; that law enforcement problems would increase; that motels in the area would apply for permits if this one was granted; and that the population of the county had voted it "dry" so it would be in direct opposition to the wishes of the people of the county to issue the private club permit.

The Arkansas Supreme Court dealt with the issue of private clubs in dry counties in the recent case of *Morris* v. *Torch Club, Inc.,* 278 Ark. 285, 645 S.W.2d 938 (1983), where it reversed and remanded the finding of a lower court that held that the permit for serving alcoholic beverages in private clubs in dry counties was not authorized under Act 132 of 1969. While the decision of the Supreme Court recognized that a private club might be operated in violation of the Act, the argument made by the appellees that it "just wasn't right" to have a private club permit in a dry country was rejected in the *Morris* case.

The argument that several motels in the area, which had bars built into them when they were originally constructed but had never been granted private club permits, would also expect to be granted permits if this one was granted, was rejected by the Board. The evidence showed that appellant's restaurant was not part of any motel,

although it was in close proximity to one; but the motel and the restaurant were distinct and separate business entities and had different owners.

The fear of law enforcement officials that alcohol related crime would increase appears from the record to be based upon speculation. The officials offered no facts or figures to support this argument and the chief of police of Hope admitted he had no problems with the Hope Country Club.

The decision of the Board in this case was based on the evidence received. The question on review is not whether the evidence would have supported a contrary finding but whether it supports the finding that was made. *Westerman v. Singleton,* 9 Ark. App. 120, 653 S.W.2d 152 (1983). The reviewing court cannot displace the Board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it *de novo*; and the question of whether the Board's action was arbitrary or capricious is only applicable when the decision is not supported on any rational basis and is made in disregard of the facts and circumstances. *First Nat'l Bank of Paris* v. *Peoples Security Bank, supra.*

We think there was substantial evidence in the record to support the Board's finding that granting this private club permit was in the public interest. Therefore, we reverse the decision of the trial court in regard to the issuance of the permit and remand this matter for that court to affirm the Board's decision.

Reversed and remanded.

CRACRAFT and COOPER, JJ., agree.