David VALLAROUTTO d/b/a Albertson's Liquor *v.*
ALCOHOLIC BEVERAGE CONTROL BOARD

CA 02-556                                   101 S.W.3d 836

Court of Appeals of Arkansas
Division IV
Opinion delivered April 2, 2003

[Petition for rehearing denied May 7, 2003.]

*Law Offices of Treeca J. Dyer, P.A.*, by: *Treeca J. Dyer* and *Steptoe & Johnson LLP*, by: *Peter Swann*, for appellants.

*Donald R. Bennett* and *Charles R. Singleton*, for appellee.

JOHN B. ROBBINS, Judge. Appellant David Vallaroutto d/b/a Albertson's Liquor appeals the denial of an application to transfer an existing liquor permit to a new location. The Alcoholic Beverage Control Board denied the application on the ground that the public convenience and advantage would not be served by the transfer. The Pulaski County Circuit Court affirmed the Board's decision, and this appeal followed. We affirm the Board, and our holding renders the Board's cross-appeal moot.

Albertson's operates a large retail grocery store in Texarkana. The store sits on a lot that is bound on the north by Arkansas Boulevard; on the east by Laurel Street; on the south by East 37th Street; and on the west by State Line Avenue, the street that serves as the border between Texarkana, Arkansas, and Texarkana, Texas. In December 1998, Albertson's purchased an existing retail liquor permit from Margaret Gleason with the goal of constructing and operating a liquor store on the northwest corner of its lot, near the intersection of Arkansas Boulevard and State Line Avenue. Gleason had held the permit since 1968, and thus it was not subject to the present-day prohibition against transferring liquor permits to the operators of grocery stores. *See* Ark. Code Ann. § 3-4-218(a) and (b) (Supp. 2001).

On September 15, 1999, Albertson's filed an application with the Alcoholic Beverage Control Director, seeking permission to transfer the location of the Gleason permit to the proposed construction site on its lot. The application was rejected on October 20, 1999, based on objections from local officials and area businesses and residents, primarily due to concerns over traffic congestion. Thereafter, Albertson's re-filed its application and proposed that the liquor store be located at the south end of the property, facing 37th Street. Albertson's hoped that, by moving the store away from the Arkansas/State Line intersection, its application would meet with greater favor.

On March 16, 2000, the Director again denied the application. Albertson's appealed the Director's decision to the Board, and a hearing was held on September 20, 2000, during which the Board heard the testimony of over a dozen witnesses and received petitions both for and against the transfer. Following the hearing, the Board denied Albertson's application, concluding that:

> Based on the existing number of retail liquor stores in this immediate market area, [and on] the probability that if the outlet transfer is approved that there will be additional traffic problems and additional vehicular accidents, the Board finds that the public convenience and advantage will not be served by granting the transfer. . . .

Albertson's appealed the Board's ruling to the Pulaski County Circuit Court. The court affirmed the Board's decision, and this appeal was brought by Albertson's.

◼     Albertson's argues first that the Board failed to make sufficient findings of fact as required by the Administrative Procedure Act. *See* Ark. Code Ann. § 25-15-210(b)(2) (Repl. 2002). Whether sufficient findings of fact have been made is a threshold question in an appeal from an administrative board. *See Olsten Health Servs. Inc. v. Arkansas Health Servs. Comm'n*, 69 Ark. App. 313, 12 S.W.3d 656 (2000).

◼     Albertson's relies on *Green House, Inc. v. Arkansas Alcoholic Beverage Control Div.*, 29 Ark. App. 229, 780 S.W.2d 347 (1989), to support its argument that this case should be remanded for additional findings of fact. In *Green House*, the Board's "findings" consisted of a narrative account of the proceedings and the witnesses' testimony, followed by the conclusion that the permit applied for was not in the public interest. In remanding the case for further proceedings, we said:

> Because the Board has merely recited the testimony rather than translating that testimony into findings of fact, we are unable to determine the Board's view of the facts, or the theory of law on which the denial of the permit was based. We addressed a similar situation in *Wright v. American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986), where we quoted the following language from *Whispering Pines Home for Senior Citizens v. Nicalek*, 48 Ind. Dec. 568, 333 N.E.2d 324 (1975):
>
>> Once again, therefore, we attempt to tell the Board what a satisfactory specific finding of fact is.
>>
>> It is a simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. It is stated in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.

*Green House*, 29 Ark. App. at 232-33, 780 S.W.2d at 349-50. We recently quoted this same passage in *Nesterenko v. Arkansas Bd. of Chiropractic Examiners*, 76 Ark. App. 561, 69 S.W.3d 459 (2002), in which we remanded for further findings from an administrative board.

The Board's decision in this case is a five-page document that, for fourteen paragraphs, merely recites the substance of witness testimony, the very type of evidentiary recapitulation that the *Green House* case cautioned against. However, that part of the document that follows the recitation of evidence reveals the pertinent facts found by the Board as the basis for its decision. The Board found that (1) based on the testimony of law enforcement officers, approval of the permit would likely increase traffic and traffic accidents in an area that already suffers a large number of accidents; and (2) based on witness testimony that there are six liquor stores within approximately a quarter of a mile of the proposed site, the area is already adequately served. The Board then concluded that the public convenience and advantage would not be served by transfer of the permit to the proposed location.

■ We believe that the Board's findings and conclusions go beyond a mere recitation of evidence and are thus adequate to permit us to undertake a proper review of the Board's ruling. We therefore proceed to the merits of the case.

■ Albertson's contends that the Board's denial of its transfer application is not supported by substantial evidence and is arbitrary and capricious. On appeal from circuit court, our review of administrative decisions is directed to the decision of the administrative agency, rather than the decision of the circuit court. *Arkansas Bd. of Registration for Professional Geologists v. Ackley*, 64 Ark. App. 325, 984 S.W.2d 67 (1998). We rely heavily upon the principle that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures, to determine and analyze underlying issues. *Fontana v. Alcoholic Beverage Control Bd.*, 11 Ark. App. 214, 669 S.W.2d 487 (1984). Judicial review is limited in scope, and the administrative agency decision will be upheld if supported by substantial evidence and not arbitrary, capricious or an abuse of discretion. *Arkansas Alcoholic Beverage Control Div. v. Person*, 309 Ark. 588, 832 S.W.2d 249 (1992).

■ When reviewing administrative decisions, we review the entire record to determine whether there is any substantial evidence to support the agency's decision. *Ackley, supra.* Substantial evidence is valid, legal, and persuasive evidence or such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* An absence of substantial evidence is

shown by demonstrating that the proof before the agency was so nearly undisputed that fair-minded persons could not reach its conclusions. *Id.* The credibility and the weight of the evidence is within the agency's discretion. *Id.*

We give the evidence its strongest probative force in favor of the Board's ruling. *See Chili's of Jonesboro, Inc. v. State of Ark. Alcohol Beverage Control Div.*, 75 Ark. App. 239, 57 S.W.3d 228 (2001). The question on review is not whether the evidence would have supported a contrary finding but whether it supports the finding that was made. *Id.* The reviewing court cannot displace the Board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it de novo. *Id.*

With these standards in mind, we now set out the evidence before the Board. David Vallaroutto testified on behalf of Albertson's that he would be the permit holder and manager of the new liquor store; that the liquor store would have a separate entrance from the grocery store; that it would be equipped with a computerized register system, which would require presentation of an ID to verify the age of buyers; and that it would have no drive-thru window, thus discouraging underage sales. District Sales Manager Fred Bennett testified that sales from the liquor store would be credited to Albertson's Community Partners Card Program, in which the store contributes money to charities based on cards that are scanned at check-out. He also said that the new store would be comfortable and well-lit with wide aisles and, further, that Albertson's successfully operated several liquor stores in Louisiana. Albertson's employee Jackie Richardson testified that Albertson's had not been cited for selling to an underage buyer. Grocery Manager Spyres testified that he believed that it would be in the public's convenience to buy liquor from the same premises as the very secure Albertson's grocery lot.

Ernest Peters, a professional engineer, testified on Albertson's behalf that the proposed liquor store would have "an unperceivable impact" on either traffic or accidents in the vicinity. He based his opinion on vehicle-per-day usage data from 1985 to 1999 and an on-site traffic count conducted in January 2000, which showed usage of State Line Avenue by 20,000 vehicles per day, a figure below 1987-96 levels. Peters also relied on data from the Texarkana, Arkansas, city police department that, between

January 1998 and October 1999, twenty-three accidents occurred in the quarter-mile area surrounding the Arkansas/State Line intersection. However, he admitted on cross-examination that he had not obtained any accident figures from the Texarkana, Texas, police department. Peters's report also indicated that the liquor store would generate considerably fewer weekday visits than a fast-food restaurant.

Albertson's also placed into evidence (1) petitions and testimony from area residents in favor of the transfer; (2) the testimony of Stacy Pittman, an anti-drunk driving advocate who praised Albertson's for not having a drive-thru window and for its system that requires presentation of an ID before a sale is made; and (3) the testimony of Carol Conley, the city Director of Public Works, who testified that, pending a look at the actual store plans, he had no opposition to the transfer of the permit.

Those opposing the transfer presented the Board with letters of opposition from local officials and liquor store owners, along with a petition signed by area residents opposing the transfer. The following witnesses also testified in opposition: (1) Jim Nicholas, a Miller County deputy who was present to testify on behalf of the county sheriff. Nicholas said that he was familiar with traffic patterns in the area of the proposed liquor store and that he believed the store would increase traffic and safety problems in the area. He also stated that six liquor stores were already concentrated in the subject area along State Line Avenue and that he and the sheriff believed that the public was already adequately served by those stores; (2) Shawn Vaughn, a Texarkana, Arkansas, police officer, who testified on behalf of the city police chief. Vaughn stated that the chief opposed the new store because of his concern that traffic would be increased in an already congested area. He also said that his department had worked twenty-four accidents on the Arkansas side of the State Line/Arkansas Boulevard intersection in the past two years and that he believed there were a similar number on the Texas side; (3) Tom Wooten, a former liquor store owner, who testified as to the concentration of liquor stores along State Line Avenue and that, in the past ten to twelve years, seventeen liquor stores had closed in Miller County due to lack of business; and (4) Scott Womack, a current owner of a liquor store in the subject area, who testified regarding the large number of traffic accidents in the vicinity since September of 1999.

■ ■ It is the public policy of the State of Arkansas that the number of permits to dispense vinous (except wines), spirituous, or malt liquor shall be restricted. Ark. Code Ann. § 3-4-201(a) (Repl. 1996). *See also Carder v. Hemstock*, 5 Ark. App. 115, 633 S.W.2d 384 (1982); *Stringfellow v. Alcoholic Beverage Control Bd.*, 3 Ark. App. 124, 623 S.W.2d 213 (1981). The Board is empowered to determine whether public convenience and advantage will be promoted by issuing the permits and by increasing or decreasing the number thereof. Ark. Code Ann. § 3-4-201(b) (Repl. 1996). Albertson's had the burden of proving that the public convenience and advantage would be promoted by transfer of the permit. *Marshall v. Alcoholic Beverage Control Bd.*, 15 Ark. App. 255, 692 S.W.2d 258 (1985).

■ ■ The term "public convenience" is not defined in our statutes; however, the supreme court noted in *Fayetteville School Dist. No. 1 v. Alcoholic Beverage Control Bd.*, 279 Ark. 89, 648 S.W.2d 804 (1983), that reference to the public convenience and advantage means that the interest of the general public is to be considered, not merely that of the applicant. Also, this court has stated that public convenience and advantage should not be restricted to a colloquial sense as synonymous with "handy or easy of access" but construed in that sense which connotes suitable and fitting to supply the public needs to the public advantage. *See Carder v. Hemstock, supra. See also Arkansas Alcoholic Beverage Control Bd. v. Muncrief*, 308 Ark. 373, 825 S.W.2d 816 (1992). The factors to be considered by the Board in determining public convenience and advantage include the number and types of alcohol permits in the area, economic impact, traffic hazards, remoteness of the area, degree of law enforcement available, input from law enforcement and other public officials in the area, and comments in opposition or support from area residents. *Edwards v. Arkansas Alcoholic Beverage Control Div.*, 307 Ark. 245, 819 S.W.2d 271 (1991).

Upon viewing the entire record, we decline to reverse the Board's decision for lack of substantial evidence. As to the Board's finding that if the transfer were approved there would be additional traffic problems and vehicular accidents, we note that the potential for traffic problems has been approved of as a factor to consider in denying a liquor permit. *See, e.g., Carder v. Hemstock, supra; Stringfellow v. Alcoholic Beverage Control Bd., supra.* However, we agree with Albertson's that, although the opposition in this

case proved that the area in question suffered from traffic problems, none of the opposition witnesses offered anything other than mere speculation as to how the new liquor store would adversely affect these problems, especially in light of Ernest Peters's report regarding the lack of perceivable impact the store would have in this regard. *See Fouch v. State*, 10 Ark. App. 139, 662 S.W.2d 181 (1983) (where we found a lack of substantial evidence to support the Board's finding that a new retail liquor outlet would greatly increase the existing traffic problem where the testimony was that the new store would not cause any more of a traffic problem than a restaurant or other facility).

Nevertheless, we are persuaded that the Board's decision is supportable on its finding that the area is adequately served by the existing liquor stores nearby. This, too, is a proper consideration in determining whether the proposed outlet would serve the public convenience and advantage. *See Edwards v. Arkansas Alcoholic Beverage Control Div.*, *supra*. We believe that the Board was entitled to rely on the opinion of area residents and public officials that the six existing liquor stores in the quarter-mile area already served the public convenience, thus obviating the need for another. As we stated earlier, administrative agencies are better equipped than courts by specialization, insight through experience, and more flexible procedures to determine and analyze underlying issues. We also reiterate that, as per our statutes, it is the public policy of the State of Arkansas that the number of liquor permits shall be restricted, Ark. Code Ann. § 3-4-201(a) (Repl. 1996), and that the Board is empowered to determine whether public convenience and advantage will be promoted by issuing the permits. Ark. Code Ann. § 3-4-201(b) (Repl. 1996). Here, various officials and citizens who were well-acquainted with the area stated their belief that the existing liquor stores were adequate to serve the public. Further, there was no clear proof that Albertson's could offer the public any convenience and advantage that was not already met by the existing stores. *See Carder v. Hemstock*, *supra*. *See also Fouch v. State*, *supra* (where the applicant submitted proof of the area's demand for its products and proof that other liquor stores did not carry particular products).

While we are mindful of Albertson's contention that the opposition evidence was adduced merely to squelch the entry of a powerful competitor such as Albertson's into the market, the

Board did not so find, and we defer to its superior ability to judge the credibility of the testimony before it.

In light of the foregoing, we conclude that, even though we disagree with the Board's finding regarding the proposed store's effect on traffic problems, when the record is viewed as a whole, the Board's decision was supported by substantial evidence. *See Stringfellow v. Alcoholic Beverage Control Bd., supra.* That being the case, it follows that the Board's decision was not arbitrary or capricious. *See Curen v. Arkansas Professional Bail Bondsman Lic. Bd.,* 79 Ark. App. 43, 84 S.W.3d 47 (2002).

Our holding renders moot the Board's cross-appeal on the ground that Albertson's application for the transfer permit was not timely filed.

Affirmed.

PITTMAN, J., agrees.

VAUGHT, J., concurs.

LARRY D. VAUGHT, Judge, concurring. Because of the great deference we give to decisions of administrative agencies, I concur in the affirmance of this case. I write separately to emphasize the necessity for boards and commissions, which are given quasi-judicial functions, to operate within the parameters of the Administrative Procedures Act. Arkansas Code Annotated § 25-15-210(b)(2) provides that a "final decision shall include findings of fact and conclusions of law, separately stated."

The majority holds, and I reluctantly agree, that the decision in this case complies with the statute. However, it is only by the thinnest thread that one paragraph out of fourteen, which is labeled neither finding of fact nor conclusion of law, meets the criteria. Surely after the direction given in *Green House, Inc. v. Arkansas Alcoholic Beverage Control Division,* 29 Ark. App. 229, 780 S.W.2d 347 (1989), which is quoted in the majority opinion, the board has no excuse for delivering decisions which require appellate courts to decipher what is supposed to be "separately stated." I assume that the board had legal counsel to assist in the drafting of the decision. If not, it should seek such assistance in the future.