Mitchell E. JOHNSON, d/b/a Sparky's *v.* Robert S. MOORE, Jr., Administrator of the Arkansas Alcoholic Beverage Control Division, et al.

CA 87-409                                              752 S.W.2d 293

Court of Appeals of Arkansas
En Banc
Opinion delivered June 29, 1988

*Bramblett & Pratt*, by: *Eugene D. Bramblett*, for appellant.

*Treeca J. Dyer*, for appellee Alcoholic Beverage Control Board.

*Sanders & Hill, P.A.*, by: *Randy L. Hill*, for appellees Lee Hornaday and Benny Grant.

JOHN E. JENNINGS, Judge. Appellant, Mitchell E. Johnson, owns a business known as Sparky's in Sparkman, a town of 600 people in Dallas County. Sparky's is a combination convenience store, gas station, restaurant, and washateria.

Appellant applied to the Arkansas Beverage Control Board for a retail off-premises beer permit. After conducting a hearing the Board granted the permit. Subsequently, several persons opposed to the issuance of the permit, including the sheriff of Dallas County, Lee Hornaday, obtained an order of the Dallas County Circuit Court remanding the matter to the Board for the taking of additional evidence. On remand, the Board heard testimony from the sheriff; a fulltime deputy, Mr. Skinner; and a part-time deputy, Mr. Franks.

The sole issue on appeal is whether the Board's denial of the permit after remand is supported by substantial evidence. We affirm.

Although the circuit court affirmed the Board's denial of the permit and this appeal comes from the decision of that court, it is clear that we are reviewing the decision of the Board, not the circuit court's decision. *See Fouch* v. *State, Alcoholic Beverage Control Div.*, 10 Ark. App. 139, 662 S.W.2d 181 (1983). Our review is limited in scope: we uphold the Board's decision if it is supported by substantial evidence and is not arbitrary, capricious, or characterized by an abuse of discretion. *Marshall* v. *Alcoholic Beverage Control Bd.*, 15 Ark. App. 255, 692 S.W.2d 258 (1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carder* v. *Hemstock*, 5 Ark. App. 115, 633 S.W.2d 384 (1982). We may not displace the Board's choice between two fairly conflicting views even though we might have made a different choice had the matter been before us *de novo. Fouch, supra.* The burden of proof was on the appellant to establish that the public convenience and advantage would be served by issuing him a beer permit. *Marshall, supra.*

It is reasonably clear from the order of the Board denying the permit that the denial was based upon a determination that it was not in the public interest to grant the permit because of inadequate law enforcement in the area. Law enforcement problems are certainly relevant to the Board's determination. *Fouch, supra.* We have no doubt that a finding that the issuance of a permit would create substantial law enforcement problems, if supported by the evidence, will in turn support a conclusion that the issuance of a permit will not promote public convenience and advantage.

Although the Board made extensive findings of fact in both its original order granting the permit and in the order issued after remand, we need examine only those findings relating to law enforcement problems because it is clear that this was the basis for the denial of the permit.

At the first hearing, appellant testified that the closest outlet for the sale of beer for off-premises consumption, in Dallas County, was 17 miles (Princeton). It is 12 miles from Sparkman to the closest outlet in Ouachita County. He testified that although Sparkman had hired one officer there was no city police department. He said that there was a part-time officer who was also a deputy sheriff who lives in Sparkman, and that his son is an

elected constable in the City of Sparkman.

Mr. Johnson's son testified that he is an auxiliary deputy sheriff for Dallas County and an elected constable for the City of Sparkman. He testified that he had talked to the sheriff and that at the time of their conversation the sheriff had no opposition to the application. He testified that he would enforce the law when he was on duty but that he had not personally arrested anyone because he was not sure of his powers of arrest. Richard Fleming, a former mayor of Sparkman testified that he thought there was inadequate law enforcement in the area now since it is a one hour drive to Fordyce.

Benny Grant, the pastor of the First Baptist Church in Sparkman, testified that he thought the permit should not be granted because of the proximity of Sparky's to a church and school. The Board also noted that it had received a letter in opposition to the application from Sheriff Lee Hornaday.

On remand, the Board heard testimony from Hornaday and made lengthy findings relating to that testimony. The sheriff testified that he had three full-time deputies including James Skinner, who lives in Sparkman and has a 200 square mile territory. The sheriff said he also had an unpaid auxiliary deputy who lived in Ouachita Township and worked in Sparkman. The auxiliary deputy has no power except under the supervision of the deputy or the sheriff. Hornaday said he needed three more deputies to adequately patrol the county, that Skinner is the busiest deputy in the county, and that Sparkman has the highest crime rate in the county. He said he had no assistance from the State Police in the western part of the county.

Hornaday expressed his opinion that the location of Sparky's, in a residential area near a church and school on Main Street, would make the workload greater for law enforcement. He said he would have trouble from the outlet because of the sale of beer and does not have the manpower to get to the store as soon as law enforcement is needed. Sparkman has no city police force. He said there was heavy traffic on the highway from the colleges in the area, especially in the spring.

Hornaday testified that Skinner had made approximately 90 arrests in the past two and one-half months and that at least one-third were put in jail at Fordyce. He testified that it takes three to

four hours to transport a suspect arrested in Sparkman to the county jail in Fordyce. He said that he currently needed two full-time deputies to patrol the Sparkman area.

On cross-examination the sheriff admitted that he had as much law enforcement availability in Sparkman as in those places where beer permits had been granted in Dallas County, Mom's Place, Farindale, and Princeton. He said that he had not objected to the permits at Princeton and Farindale because there was no opposition from area residents to the applications. He also said, however, that there is no town around Mom's Place and that Princeton has a population of forty-one. He said there was no school at any of the three locations.

The Board also heard testimony from James Skinner that he currently had his hands full with subpoena service, tickets, investigations, and the like, and that he worked seven days a week. He also gave his opinion that the issuance of the permit would increase law enforcement problems but could point to no specific problems which had arisen since the issuance of the permit to appellant.

■ On these facts we hold that the Board's ultimate conclusion, that the issuance of a beer permit for Sparky's would not be in the public interest, is supported by substantial evidence and is not arbitrary or capricious.

Appellant argues that our decision in *Snyder* v. *Alcoholic Beverage Control Bd.*, 1 Ark. App. 92, 613 S.W.2d 126 (1981), requires reversal here. In *Snyder*, we said:

> There is no evidence in this case to indicate that the public would be inconvenienced or would be placed at a disadvantage by the issuance of this permit. In fact, the Board seems to have based its decision primarily on the fact that there was opposition from a significant number of persons, including the chief of police and a lieutenant on the police department of the City of Camden. The number or official position of persons who object or support the issuance of retail liquor permits is of no significance under the statute. The reasons those persons oppose or support specific permit applications may be very significant. The reasons may clearly show whether the public convenience or advantage will be served.

■ Appellant's argument is that, because the sheriff testified that he would not have opposed the issuance of the permit at Sparky's if it were not opposed by people in the area, the Board in effect denied the permit because of such opposition. In our view, however, the sheriff's motive in testifying is relevant only to the issue of the credibility of his testimony. The credibility of witnesses is essentially a matter for the trier of fact, in this case the Board. *Arkansas Health Planning & Development Agency* v. *Hot Spring County Memorial Hospital*, 291 Ark. 186, 723 S.W.2d 363 (1987). The Board obviously believed the testimony of the sheriff and this was its prerogative. That testimony supports a finding that the issuance of a beer permit at Sparky's would create significant law enforcement problems, and such a finding, in turn, supports the Board's ultimate conclusion that the issuance of such a permit would not serve the public convenience or advantage.

Affirmed.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. I dissent from the majority court's affirmance of the Board's decision denying the appellant an off-premises beer permit in Dallas County, a wet county. I agree with the majority court that we are reviewing the Board's decision, and not that of the circuit court, but I do not think that the Board's decision is supported by substantial evidence.

First it is necessary to outline the procedural history of this case. Originally, on January 21, 1987, the Board granted the permit in question. At that hearing, the Board had before it testimony on all facets of the case, as well as exhibits, including a letter from Sheriff Hornaday, in which he stated:

> I request that license for a retail beer permit to Mitchell Johnson, d/b/a Sparky's be denied because of lack of law enforcement in that area.

In spite of the opposition of members of the community and the sheriff's letter, the Board found that the public convenience and advantage would be served by the issuance of the permit. Next, Sheriff Hornaday wrote the Board asking that it reopen the case, recommending that the permit not be issued because of law

enforcement problems. Sheriff Hornaday and Reverend Grant then filed a circuit court action in Dallas County, seeking to appeal the Board's decision, to stay the issuance of the permit, and requesting that the circuit court remand the case to the Board for additional testimony. The court found that the case should be remanded for additional testimony by Sheriff Hornaday and others on the issue of adequacy of law enforcement in the area. No appeal was taken from the order of remand, and that order is not at issue in this appeal. On remand to the Board, in a hearing held on February 18, 1987, the Board heard three witnesses: Sheriff Lee Hornaday, Dallas County Deputy Sheriff James Skinner, and part-time deputy C.W. Franks. Skinner testified that he was also employed in a law enforcement capacity by the city of Sparkman, where the proposed permit was to be issued. He testified that he was responsible for the western half of Dallas county, that Sparky's had been operating for about three weeks (the circuit court denied the request for a stay in the issuance of the permit), and that he had had no problems related to the operation of Sparky's. He further stated that he believed that an alcohol outlet increased law enforcement problems, depending on the traffic situation. Franks testified that as a part-time deputy, he was authorized to work twenty hours per week, and that a lot of his work took him around Sparkman.

Sheriff Hornaday testified that he needed several more deputies, that the State Police did not help him in the western part of Dallas County, that Sparkman had the highest crime rate in the county, that Mr. Skinner was his busiest deputy, that Sparky's was close to a school, and that Skinner had to take his prisoners to Fordyce, some thirty miles away from Sparkman. Hornaday also stated that he had not opposed the issuance of permits at Farindale, at Mom's Place on Highway 9, and at Princeton. Of particular significance is that he then said that none of the persons living in those areas objected, so he did not object either. Further, the Sheriff stated that he knew that the issuance of a permit at Mom's Place would make law enforcement more difficult.

Based on this supplemental testimony, the Board reversed its earlier approval of the permit at Sparky's, and denied the appellant's application. On appeal, the circuit court affirmed, finding substantial evidence to support the Board's decision.

The majority correctly explains this Court's standard of review, and on the surface I must admit that the Board's decision appears to be supported by substantial evidence. However, a careful analysis makes it clear that neither the testimony of Skinner nor Franks provided substantial evidence for a finding that the issuance of the requested permit would not serve the public convenience and advantage due to a lack of law enforcement in the Sparkman area. Thus, the result in this case stands or falls on the testimony of Sheriff Hornaday.

The most striking aspect of the Sheriff's testimony is his candor. In response to a question by the appellant's attorney, Mr. Bramlett, Sheriff Hornaday said that he did not object to the permit application for Mom's Place because "there wasn't a soul up there objected; I don't see why I should . . . [t]hem people live up there and if they object, I object; if they don't I think that is their country and if they want beer up there they can have it; if they don't want to have it they ought not to have it." [T101].

Regarding the Princeton (population 41) permit application, the Sheriff said that he did not object to it, stating: "No, nobody up there objected out of the 40." [T102] As to the Farindale application, he said: "No, I didn't object to it; nobody else objected." [T102].

Finally, as to this appellant's application, the Sheriff said:

> If the people agree that they wanted beer in Sparkman, Arkansas, they wouldn't hear nothing from me and they could put up with the law as bad as it is if they want to. [T102].

Thus, it ought to be obvious to anyone that, regardless of the law enforcement needs of the communities he serves, regardless of the availability of police protection, regardless of the proximity of permitted premises to schools or busy highways, and regardless of the remoteness of the areas in which such premises were located, Sheriff Hornaday would not oppose a permit application unless there were objections from the residents of those areas. This is the substance of his testimony regarding the permits at Mom's Place, at Farindale, at Princeton, and the appellant's application for a permit. The majority discounts these amazingly candid admissions by suggesting that the Sheriff's motives in testifying are only relevant to his credibility, and then notes that

the Board chose to exercise its perogative and believe the sheriff. I disagree because not only the Sheriff's motives in appearing to testify, but the fact of his opposition, according to his own testimony, was based totally on public sentiment. It is clear to me that our decision in *Snyder* v. *Alcoholic Beverage Control Board*, 1 Ark. App. 92, 613 S.W.2d 126 (1981) is directly on point and requires reversal of this case. There we noted that the reasons witnesses oppose or support permit applications may be significant. The bottom line in this case is that the Sheriff admitted that his sole reason for testifying was public opposition. I submit that his testimony cannot constitute substantial evidence in light of his admissions.

In *Johnson* v. *ABC Board*, 6 Ark. App. 366, 642 S.W.2d 335 (1982), a case involving this same appellant, this Court, citing ABC Regulations, Section 1.32, affirmed the Board's denial of a permit where the Board cited the fact that a permit was to be located next to a dry county and that its location was remote. In *Copeland* v. *ABC Board*, 4 Ark. App. 143, 628 S.W.2d 588 (1982), this Court (with two judges dissenting) affirmed the Board's denial of a permit based on the remoteness of the proposed location. I have found no case in which the Board denied a permit, on the basis of inadequate law enforcement, which did not involve an application for a permit in a remote area, much less a denial on this basis involving the second most populous area of a given county. In this case, the Board, in its findings and conclusions of law following the February 18, 1987, hearing, specifically relied on Section 1.32(3) of its regulations, and stated:

> Section 1.32(3) prohibits the issuance to any premises for which adequate police protection is not available. The regulation provides that a permit cannot be issued if adequate police protection is not available due to the remoteness of the location of the premises from law enforcement within that city or town.

I submit that Regulation 1.32(3) offers no support for the Board's action, for in no sense of the word can the city of Sparkman be characterized as remote.

The attached map, the appellant's exhibit one, shows the fallacies of the Board's, and this Court's, reasoning. Permits exist at Farindale, a remote area in northeast Dallas county; at Princeton, a town of about 40 people, located approximately in

the middle of Dallas county; and at Mom's Place, a "round hill" according to Sheriff Hornaday, at the intersection of Highways 9 and 46 in the extreme north central part of the county. As noted earlier, in *Johnson* v. *ABC Board, supra,* we affirmed the Board's denial of a permit in Dalark, based on its remoteness.

We should remember that Dallas County is a wet county where a majority of the residents, including those who elected the Sheriff, voted to allow permits such as this one. If it is the Board's policy to disallow permits in remote areas of wet counties because of a lack of law enforcement, and it is also the Board's policy, affirmed by the majority in this case, to deny permits in populated areas of wet counties, then it occurs to me to wonder where, in wet counties without enough deputies (all of them I suspect, according to their sheriffs) permits can be issued.

I would reverse this case and remand for the Board to issue the permit in question for several reasons. First, although I realize that, on remand, the Board was empowered to modify, reverse, or affirm its earlier ruling, no new evidence was really presented at the second hearing. Second, the Sheriff clearly stated that the lack of law enforcement was not the real basis for his stated opposition to the permit, but that his objection to the permit was actually based on the opposition of his constituents in the area—such opposition, according to his sworn testimony, determined not only whether he opposed a permit, but whether he even bothered to appear at hearings on permit applications in his county. Third, despite the original evidence that law enforcement was lacking, the Board initially decided that the public convenience and advantage would be served by issuing the permit in question. That the Board reversed its initial decision on the basis of the evidence presented on remand makes it obvious to me that the Board simply caved in to political pressure from the Sheriff, who, as noted, only bothered to appear and oppose because of political pressure brought to bear on him. For this Court to find that the Sheriff's testimony constituted substantial evidence, and to affirm, makes a mockery of the administrative process and our appellate review of ABC Board decisions.

There simply is no substantial evidence in this record to support the Board's decision, and I would reverse.

I dissent.