2012 Ark. App. 237

**Jack BARNES et al., Appellants**

v.

**ARKANSAS DEPARTMENT OF FI-NANCE & ADMINISTRATION, Alcoholic Beverage Control Board, et al., Appellees.**

No. CA 11–869.

Court of Appeals of Arkansas.

April 4, 2012.

Jim L. Julian, Heather G. Moody, Chisenhall, Nestrud & Julian, P.A., Little Rock, for Appellants.

Donald R. Bennett, Little Rock, for Appellee.

DAVID M. GLOVER, Judge.

This is the second appeal from the Alcoholic Beverage Control Division (ABC) Board's approval of a private-club permit for Lamar's Bistro in Magnolia, Arkansas. The first appeal challenged the Board's

decision because of its lack of findings of fact and conclusions of law, and we reversed and remanded on that basis. *Barnes v. Ark. Dep't of Fin. & Admin.*, 2010 Ark. App. 436, 2010 WL 1997776. On remand, we permitted another hearing, during which the parties were able only to argue their positions to the ABC Board, absent presentation of any new evidence. ABC, again, decided to issue the permit. A second appeal was taken to the Columbia County Circuit Court, which again affirmed the ABC decision. The present appeal to our court challenges the ABC's approval of the permit on three bases: 1) Lamar's Bistro did not establish a nonprofit object or purpose other than the consumption of alcohol; 2) ABC's decision is based upon an erroneous statutory interpretation; and 3) Lamar's Bistro did not establish that it was a valid nonprofit corporation in existence for one year before it applied for a private-club permit. In both appeals, oral arguments were requested and granted. On the record presented, we affirm ABC's decision to grant the permit.

## I. *Background/Testimony*

Lamar's Bistro is a nonprofit corporation that operates within the Bayou Bistro Restaurant in Magnolia, Arkansas. Magnolia is located in Columbia County, a dry county. Todd Gilreath, in essence, owns both facilities. In June 2007, Gilreath applied for a private-club permit for "Lamar's Bistro, Inc. d/b/a Bayou Bistro of Magnolia." Obtaining the permit would allow his business to serve alcohol in the dry county.

ABC's form application specifically states that a private club must exist for some reason other than the consumption of alcoholic beverages, explaining:

Arkansas law requires that a private club must exist for some reason other than the consumption of alcoholic beverages. On this sheet of paper, which is a part of your verified application, *you are to describe, in complete detail, what entertainment (live bands, dancers, food service, etc.), social functions, or other recreational events will be available at the club for the members.* If you are in doubt about whether to list an item, you are urged to include it.

(Emphasis added.) Gilreath submitted the following description:

Bayou Bistro of Magnolia is a food service establishment in which I would like to serve alcoholic beverages. *The primary purpose of the club is to operate as a restaurant. The sale of alcohol is to supplement the dining experience.* The majority of sales from this operation will be food related.

(Emphasis added.)

Appellants, Jack Barnes, Kyle Barnes, Mary Barnes, Bobby J. Frizzell, Harold Harris, Marie Harris, Max Story, Charles F. Tripp, and James W. Yates, Jr., opposed the permit. On August 16, 2007, the director of the Alcoholic Beverage Control Division granted the permit and notified those who had opposed it of their right to appeal the decision to the ABC Board, which they did on August 30, 2007.

The original hearing before the ABC Board was held on November 14, 2007, and it was the only hearing at which evidence was actually submitted in this case. The witnesses who testified at that hearing were Todd Gilreath, who sought the permit, and Harold Harris, Charles Tripp, and Bobby Frizzell, who opposed the permit.

Todd Gilreath testified that his restaurant is a Creole and Italian restaurant; that it had operated in Magnolia from February 2005 until August 2007 without a private-club permit; that he pursued the

permit at the prodding of his customers; that in comparing his business before and after receiving the permit to dispense alcoholic beverages, he had seen over a sixty-percent increase in business; that of total sales, 11.2% was alcohol related, meaning that he had picked up a lot of food business; and that he put several restrictions on his operation: no customer can come in the restaurant and consume only alcohol, there is a three-drink maximum, and nobody is served if they arrive already showing signs of alcohol consumption. He also testified that he does not reference the sale of alcoholic beverages by the private club on his restaurant menu.

Gilreath explained that he has been a resident of south Arkansas for ten years; that he could think of six or seven restaurants that had come and gone in that time period; that he has seen a big increase in his business since receiving the permit; and that it has definitely had an economic impact. He said that he believed serving alcohol definitely enhanced the dining experience at his restaurant. He explained that he started with 130 members in the private club and that he currently has 1200 members.

Ron Fuller, one of the Board members, clarified for the record that there had been no objection to the private club's application from local officials or law enforcement at the time the permit was granted and that only nine people had objected. Bistro's counsel introduced letters from the manager of the Holiday Inn Express, stating that since the permit had been granted to the bistro, her business was "starting to come back," and a Southern Arkansas University faculty member, stating that the college hosts conferences and prospective employees who at times seek other locations because Columbia is a dry county. Bistro's counsel also introduced a "resolution" from a group of Magnolia business-

men (Magnolia Unlimited), which expressed support for the permit, citing studies from "economic development consultants who have made it clear that business development in communities such as ours is enhanced by availability of some choices of beverages accompaniment to meals in restaurants, including wine and spirits."

Gilreath testified that the bistro was located in a primarily commercial area; that no churches were close by; that the courthouse was located to the south of the bistro; and that the other existing permits belonged to a country club, the American Legion, and a bed and breakfast. He explained that the bistro's location did not pose a traffic hazard; it was in a "pretty low traffic area"; that to his knowledge, there was no opposition from any neighbors; that there was no problem with the building being unsuitable as a restaurant; that the closest school was "at least a mile and a half, probably two," from the bistro; and that the nearest church was at least as far away as the police station, and he was not aware of any opposition from the church.

On cross-examination, Gilreath testified that the bistro was on the thoroughfare between Southern Arkansas University and downtown Magnolia; that the club that was in existence in 1997 was actually Southwest Arkansas Roadrunners, Inc., a motorcycle club; and that neither he nor his father was an officer or member of that predecessor club. Gilreath testified that his "nonprofit is in existence for the purpose of operating inside my restaurant as a nonprofit granted to the larger business which is Gilreath Enterprises, LLC, for the sole purpose of enhancing the dining experience of our customers." He explained that the restaurant is leased to Gilreath Enterprises, LLC, of which his father is the president.

The testimony of the three witnesses who opposed the permit at the hearing was essentially the same. All three basically testified that they oppose the consumption of alcohol, that the voters of Columbia County had made clear their desire for the county to be dry, and that granting the permit would erode the dry nature of the county.

## II. *Standard of Review*

 In these types of cases, appellate review is directed, not toward the circuit court's decision, but rather toward the agency's decision. *Chandler v. Ark. Appraiser Licensing & Certification Bd.,* 2011 Ark. 519, 2011 WL 6091354. Arkansas Code Annotated section 25–15–212 (Repl.2002)₆ pertains to the judicial review of administrative adjudications by a circuit court, and provides in pertinent part:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the agency's statutory authority;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Affected by other error or law;
> >
> > (5) Not supported by substantial evidence of record; or
> >
> > (6) Arbitrary, capricious, or characterized by abuse of discretion.

The rules governing judicial review of administrative decisions are identical for both the circuit and appellate courts. *City of Hector v. Ark. Soil & Water Conservation Comm'n,* 47 Ark.App. 177, 888 S.W.2d 312 (1994). We reverse only if substantial evidence is lacking, an abuse of discretion has occurred, or if the agency has acted in an arbitrary or capricious manner. *Id.* We have explained that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Gilmore v. Ark. Bd. of Registration for Prof'l Eng'rs & Land Surveyors,* 2011 Ark. App. 139, 381 S.W.3d 860. We review issues of statutory interpretation de novo; however, the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *Ark. State Highway & Transp. Dep't v. Lamar Advantage Holding Co.,* 2011 Ark. 195, 381 S.W.3d 787.

 |₇An administrative decision should be reversed as arbitrary and capricious only when it is not supportable on any rational basis, not simply because the reviewing court would have acted differently. *Ark. State Police Comm'n v. Smith,* 338 Ark. 354, 994 S.W.2d 456 (1999). Determining whether the Board's decision was arbitrary or capricious involves a limited inquiry into whether it acted with willful and unreasoning disregard of the facts and circumstances of the case. *Id.* In determining whether an administrative decision is supported by substantial evidence, the reviewing court is to give the evidence its strongest probative force in favor of the agency's ruling. *Id.* The question on review is not whether the evidence would have supported a contrary finding but whether it supports the finding that was made. *Id.* The reviewing court cannot displace the Board's choice between two fairly conflicting views even though the court might have made a different choice had the matter been before it de novo, and the question of whether the Board's action was arbitrary or capricious

is only applicable when the decision is not supported by any rational basis and is made in disregard of the facts and circumstances. *Fontana v. Gunter*, 11 Ark.App. 214, 669 S.W.2d 487 (1984). A reviewing court may not set aside a Board's decision unless it cannot conscientiously find from a review of the entire record that the evidence supporting the decision is substantial. *Id.*

### III. *Discussion*

■ Appellants' first two points of appeal can best be discussed together. They contend that Lamar's Bistro failed to establish that it had a nonprofit purpose other than the ₈consumption of alcohol, and that the Board's interpretation of the applicable statute in granting the permit was erroneous and overly broad. We disagree.

Arkansas Code Annotated section 3–9–202(12)(A)(i) (Supp.2011) provides:

> "Private club" means a nonprofit corporation organized and existing under the laws of this state, no part of the net revenues of which shall inure directly or indirectly to the benefit of any of its members or any other individual, except for the payment of bona fide expenses of the club's operations, and which is *conducted for some common recreational, social, patriotic, political, national, benevolent, athletic, community hospitality, professional association, entertainment,* or other nonprofit object or purpose *other than the consumption of alcoholic beverages.*

(Emphasis added.) In making their argument, appellants rely heavily upon Gilreath's application for the permit and his testimony at the original hearing where he stated that the nonprofit had "the sole purpose of enhancing the dining experience of our customers." They argue that Gilreath described no secondary civic purpose for Lamar's Bistro; that the two purposes articulated for the restaurant and the private club are dining and consumption of alcohol; that the restaurant itself serves the purpose of providing a dining experience; and that the only purpose the private club serves independent from the restaurant is the consumption of alcohol. The argument totally segregates Lamar's Bistro from Bayou Bistro, despite the fact that they operate, in stated purpose and in fact, as integrated entities. If Lamar's Bistro were not an integral part of the restaurant, *i.e.*, if it stood alone on a street in Magnolia and served only alcohol, we would likely agree with appellants' contention. However, it does not stand alone. The stated purpose is not merely the consumption of alcoholic beverages. That is, Lamar's Bistro is not simply a ₉bar; rather, it operates in conjunction with the restaurant and is designed to enhance the dining experience. Moreover, Gilreath testified about the self-imposed restrictions that he instituted to help assure that the provision of alcoholic beverages merely enhanced the dining experience, rather than serving as the object of a customer's patronage. Specifically, he explained that no customer could come into the restaurant and consume only alcohol, that there was a three-drink maximum, and that nobody was served if they arrived already showing signs of alcohol consumption.

In the permit application process, Gilreath submitted the following description:

> Bayou Bistro of Magnolia is a food service establishment in which I would like to serve alcoholic beverages. *The primary purpose of the club is to operate as a restaurant. The sale of alcohol is to supplement the dining experience.* The majority of sales from this operation will be food related.

(Emphasis added.) In addition, Gilreath candidly testified before the Board that his

"nonprofit is in existence for the purpose of operating inside my restaurant as a nonprofit granted to the larger business which is Gilreath Enterprises, LLC, for the sole purpose of enhancing the dining experience of our customers." The ABC Board did not view the private-club operation in the totally separate fashion argued by appellants, and neither did it interpret section 3–9–202(12)(A)(i) so narrowly as appellants urge. As noted previously, the ABC's form application specifically states that a private club must exist for some reason other than the consumption of alcoholic beverages, explaining:

> Arkansas law requires that a private . club must exist for some reason other than the consumption of alcoholic beverages. On this sheet of paper, which is a part of your verified application, *you are to describe, in complete detail, what entertainment (live bands, dancers, food service, etc.)*, social functions, or other recreational events will be available at the club for the members. If you are in doubt about whether to list an item, you are urged to include it.

(Emphasis added.) ABC clearly defines the statutory term "entertainment" to include "food service," and it clearly regarded Lamar's Bistro and Bayou Bistro to be part and parcel of the same operation. In other words, ABC determined that Lamar's Bistro existed for some purpose other than the consumption of alcoholic beverages in that food service was also available.

Though we review issues of statutory interpretation de novo, the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *Ark. State Highway & Transp. Dep't v. Lamar Advantage Holding Co.*, 2011 Ark. 195, 381 S.W.3d 787. Here, the Board found in part:

The Board further finds that the existence of the private club will serve people who live in the local Magnolia, Columbia County area, as well as persons who may visit the locale and it will give residents of that territory an opportunity to enjoy a dining experience with alcoholic beverage products without having to go out of town. The Board further finds that based on legislative enactments that the purpose of the nonprofit corporation, which is the serving primarily of food products is a proper application and meets the requirements of ACA 3–9–221, as amended by provisions of Act 1813 of 2003. The Board finds that the addition of the private club permit will enhance the dining experience and the Board concludes that the application is one that is fully authorized by Act 1813 of 2003. The Board further notes that the Arkansas General Assembly, at its earliest convenience, has rendered moot the decision found in *Chili's v. State*, 75 Ark. App. 239, 57 S.W.3d 288 [228], a decision handed down on October 17, 2001. It was in that case that the Arkansas Court of Appeals opined that being a mere "social eatery" was an insufficient purpose for receiving a private club permit. Then an amendment was passed by the Legislature at its earliest opportunity on the definition of a private club permit at ACA 3–9–202(10) and the declaration of legislative intent at 3–9–221 and that the amendment clearly sets forth that restaurants do serve the hospitality of the community wherein they are located.

The Board further finds that there is no necessity under the amendment for there to be a convention or meeting in order for alcoholic beverages to be served at a properly qualified private club. The Board finally concludes that under all of the appropriate amend-

ments that have been made by the Arkansas Legislature, that the application is one that meets all requirements as the Board finds that it is in full compliance with the amendments made by Act 1813 of 2003, that the organization exists for a lawful purpose and that the application is qualified to be received by the agency and is in the overall public interest, all as required by law. It is therefore the final conclusion of the ABC Board that the private club permit issued to Mr. Gilreath as manager for the not for profit corporation should be continued and that the same stays in force and GRANTED by the ABC Division.

In reviewing the ABC Board's interpretation of the statutory definition of a "private club," we cannot say that it is clearly wrong.

It is central to our decision that we are not convinced by appellants' argument that our decision in *Chili's of Jonesboro, Inc. v. State Alcohol Beverage Control Division*, 75 Ark.App. 239, 57 S.W.3d 228 (2001), remains viable. First, it is important to note that in the *Chili's* case, our court was *affirming* the Board's *denial* of private-club permits to two restaurants. In addition, at the time *Chili's* was decided, the definition of private club did not include the terms, "community hospitality," "professional association," or "entertainment." Those terms were added by a 2003 amendment to the statute that was passed during the first regular session of our legislature after our decision in *Chili's* was handed down. The ABC Board has clearly changed its position in light of the statutory amendments. ABC's permit application plainly provides that "food service" is encompassed within "entertainment," and in its decision under review here, it specifically found that "restaurants do serve the hospitality of the community, wherein they are located." Determining that eating out at a restaurant constitutes a form of entertainment does not strike us as unreasonable. We recognize that the legislature had the discretion to actually name the *Chili's* case and specifically overturn it by amendment; we likewise recognize that it was not necessary for the legislature to do so in order to produce the same effect with its amendments to the statute. As the agency charged with its administration, the ABC Board's interpretation of the definition of "private club" under section 3-9-202 is entitled to great deference, and its interpretation should not be overturned unless clearly wrong. We cannot say that the Board is clearly wrong in its interpretation.

■ For their final point of appeal, appellants contend that Lamar's Bistro did not establish that it was a valid nonprofit corporation in existence for one year before it applied for a private-club permit. In making this argument to us, however, they have significantly expanded it to note several concerns that were not raised before the Board. For example, they argue here that Todd and his father were not authorized to change the name of the nonprofit corporation; that the record does not detail how a nonmember could be chairman of a nonprofit corporation; that the minutes do not identify the secretary who prepared the minutes; that the secretary is not listed as a present member; that the minutes stated a majority of members were present, but the Gilreaths were the only persons listed as present; and that Arkansas law requires a nonprofit corporation to have no fewer than three directors, yet the minutes only note the two Gilreaths as directors. Moreover, as mentioned above, the opposition witnesses essentially limited their testimony to stating that they opposed the consumption of alcohol generally, that the voters of Columbia County had made clear their desire for the county to be dry, and that granting

the permit would erode the dry nature of the county. Consequently, the ABC Board was not presented with the expanded arguments now made on appeal, nor was evidence on those issues adequately presented. In fact, appellants' counsel at that hearing stated that he was going to save the nonprofit issue "for another day."

In short, the ABC Board was presented with Lamar Bistro's certification of nonprofit status from the Arkansas Secretary of State, and from that certification, the ABC Board specifically found that the nonprofit corporation "had been in existence for more than one year prior to the date of application, going back to the date that the Roadrunner organization was first filed with the Secretary of State's Office," which was 1997. We affirm that finding. The expanded arguments appellants present to us in this appeal to challenge the nonprofit status of the corporation were not fully developed before the Board, and, consequently, they were not properly preserved for our review, and we do not address them.

Affirmed.

VAUGHT, C.J., and HART, ROBBINS, and ABRAMSON, JJ., agree.

GRUBER, J., dissents.

GRUBER, J., dissenting.

I respectfully dissent from the majority's holding affirming the Board's interpretation of a "private club" and its finding that Lamar's Bistro established a proper nonprofit purpose. Under the majority's interpretation, any restaurant serving alcohol in a dry county, without more, may now qualify as a private club. I would reverse the Board's decision because it is in violation of Ark.Code Ann. § 3–9–202(10)(A)(i) (Repl.2008), in excess of the Board's statutory authority, and not supported by substantial evidence.

While I recognize the great deference we give to an agency's interpretation of a statute that it administers, we cannot interpret a statute to mean anything other than what it says. *MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 31, 210 S.W.3d 878, 883 (2005). The primary rule in the construction of a statute is to give effect to the intention of the lawmakers, and this intention is to be ascertained from a consideration of the entire act. *Sw. Bell Tel. Co. v. Ark. Pub. Serv. Comm'n*, 20 Ark.App. 30, 33, 727 S.W.2d 384, 386 (1987). The "entire act" in this case includes a chapter entitled "Local Option," in which the legislature has given to the voters of each county the right to determine whether to permit the sale of alcohol in that county. Ark.Code Ann. §§ 3–8–101 et seq. (Repl.2008). The voters of Columbia County exercised this right, and Columbia County has been dry since 1943. A "private club"—as defined in Ark.Code Ann. § 3–9–202(10)(A)(i)— is a limited exception to the dry-county designation. Furthermore, this exception exists within the context of promoting regional meetings, conventions, and tourism. Ark.Code Ann. § 3–9–201(b), (c), & (e) (Repl.2008).

To fall within this exception, a private club must be conducted for "some common recreational, social, patriotic, political, national, benevolent, athletic, community hospitality, professional association, entertainment, or other nonprofit object or purpose *other than the consumption of alcoholic beverages.*" Ark.Code Ann. § 3–9–202(10)(A)(i) (emphasis added). I disagree with the majority that "enhancing the dining experience" is an appropriate nonprofit purpose under this statute. Although Lamar's application did not state—and Mr. Gilreath did not testify regarding—any purpose other than enhancing the dining experience, the majority has determined that Lamar's purpose is "entertainment"

because the Board's printed application form includes the following examples of entertainment: "(live bands, dancers, food service, etc.)." Thus, the majority affirms the Board's interpretation of the statute that food service alone is a satisfactory nonprofit purpose: i.e., restaurants provide food; Lamar's is a restaurant; therefore, Lamar's offers entertainment; end of discussion.

I am not persuaded that operation of a restaurant that serves alcohol, without more, is a proper purpose under the statute. Nor am I persuaded that the 2003 amendment adding community hospitality, professional association, and entertainment to the definition of private club overruled our decision in *Chili's of Jonesboro, Inc. v. Ark. Alcohol Beverage* |₁₆*Control Div.*, 75 Ark.App. 239, 57 S.W.3d 228 (2001). The legislative history is silent on the matter, and the statute does not mention food service or the operation of a restaurant. I simply do not read the statute as broadly as the majority.

The real purpose in this case, the so-called enhancement, is to serve alcohol at an existing restaurant in order to increase sales and profits. There is no other "entertainment" purpose. Thus, the purpose is the consumption of alcoholic beverages, which, notably, is the only purpose expressly forbidden by the statute. The majority's holding distorts the plain language of the statute at worst and adds language that it does not contain at best. Finally, an interpretation of the law that is supported neither by the statutory language itself nor by its legislative history—particularly when that interpretation effectively nullifies another chapter (Local Option) in the same title—is, in my view, clearly wrong.