2012 Ark. App. 619

**CAPITOL ZONING DISTRICT COMMISSION, Appellant**

v.

**B. Patrick COWAN, Appellee.**

**No. CA 12–192.**

Court of Appeals of Arkansas.

Oct. 31, 2012.

Rehearing Denied Dec. 5, 2012.

WAYMOND M. BROWN, Judge.

This appeal arises from a Pulaski County Circuit Court order reversing the decision of the Capitol Zoning District Commission denying appellant Patrick Cowan's application to install a 48–inch–high fence around his property. Because there was substantial evidence to support the Commission's decision, we reverse the circuit court.

### Background

Patrick Cowan and his wife purchased a house in downtown Little Rock known as the Augustus Garland House, a historic Arkansas residence that was built in 1873 and has been listed on the National Register of Historic Places. The house twice served as the governor's mansion and is

located in an area where the MacArthur Park Historic District and the Capitol Zoning District overlap, in a special zoning category for the area around the current Governor's Mansion: Zone "N", Neighborhood Residential & Commercial.[1] The house is located on a corner lot, facing two sidewalk-lined streets.

On February 11, 2011, Cowan applied to the Capitol Zoning District Commission for permission to repair and resurface the roof of the home, to install three small security cameras under the roof of the front porch, and to construct a 48–inch–high, wrought-iron fence that would enclose the property. On March 3, 2011, the Commission issued Cowan a permit to install the security cameras and repair the roof. Commission staff prepared a report concerning Cowan's proposed fence. The report, dated March 15, 2011, cited the following as criteria for reviewing such permit applications:

Capitol Zoning District Ordinance 2105.-C.2(b): Prior to issuance of a Design Review Permit ... the proposed construction shall be reviewed for its appropriateness in historical style in the context of adjoining or neighboring structures; and its consistency with the goals of the Commission's Master Plan ...

Rehabilitation Standards for Historic Properties, Preservation Principles 1. Respect the historic design character of the building.

Rehabilitation Standards for Historic Properties, Historic Streetscape and Site Design Features

Policy: Historic streetscape and site features that survive should be preserved. In addition, new features should be compatible with the historic context.

[Rehabilitation Standards for Historic Properties] R1.8: A new fence should be in character with those seen historically.

The fence should be in keeping with the building style.

. . . .

A fence that defines a front yard is usually low to the ground (less than 40 inches). The scale should be maintained.

. . . .

On corner lots, both sides that abut public sidewalks and streets should be treated as front yard fences.

The Commission staff report noted that the Little Rock Historic District Commission had approved Cowan's request for a 48–inch fence and that such a fence was generally consistent with the standards listed in the second and third paragraphs quoted above. However, the Commission staff found that the proposed fence was only partially consistent with R1.8, stating:

Staff believes that design and placement of the proposed fence are appropriate to the property and its surroundings. Moreover, historic photographs [attached to the report] indicate that a similar fence once stood at this location. However, the proposed height of 48 inches is taller than what is recommended on the north and east sides of the property [the sides facing public streets].

Accordingly, the staff report recommended that Cowan be given a permit to build his proposed fence, on the condition that it not exceed 40 inches in height along the north and east sides.

The Design Review Committee met on March 16, 2011, discussed Cowan's proposal,[2] and voted unanimously to follow guideline R1.8 and approve the fence as long as

1. The house is zoned for single-family use.

2. For instance, the committee discussed the visibility of the fence (one member said it was

not very visible, another said it was right on the sidewalk and very noticeable) and the scale of the fence (one member pointed out

it was not over 40 inches high. On March 29, 2011, the Mansion Area Advisory Committee met and also voted unanimously to accept the Commission staff report's recommendation and require the fence not to exceed 40 inches in height. Cowan was out of town and did not attend either the Design Review Committee or Mansion Area Advisory Committee meetings.

The Commission held a hearing on Cowan's application on March 31, 2011. As reflected in the meeting minutes, five members of the Commission were present and four were absent. Under the Commission's rules, a motion to grant a permit requires an affirmative vote of the majority of the full Commission, and the failure of a motion to grant a permit constitutes denial of that permit. This meant that Cowan's application would be denied if any of the five members present at the March 31, 2011 meeting voted against him. At the beginning of the hearing, the Commission chairman informed Cowan that he had the right to defer his application until a later month when the full Commission would be present.

Brad Jordan of the Commission staff made a presentation reviewing Cowan's application and describing the historical significance of the residence for the Commission. Cowan then proceeded with his presentation, arguing first that a 40–inch fence was not feasible to install because pre-fabricated fences only came in 48–inch and 36–inch heights, and that it would be prohibitively expensive to hire someone to custom make a 40–inch fence. As a result, Cowan contended, a 40–inch limit would effectively restrict him to a 36–inch fence, which he believed would be inadequate for

security. He felt, however, that a 48–inch fence would be more secure because would-be criminals would "at least have to hop over" it. He also argued that numerous buildings in the area had fences over 40 inches high, a few as high as six feet, and he showed photographs of these buildings. The buildings pointed out by Cowan included a post office, a college, a medical center, an office building, two apartment complexes, and five or six residences.

Following Cowan's presentation, commissioners observed that many of the properties Cowan had pointed out were businesses or were otherwise zoned for non-residential use (e.g., the post office or Philander Smith College), or were residences that only had higher fences in their side yards[3] or were grandfathered in. Commissioner Miller commented:

> You have ... one of the most important houses that we have in the state of Arkansas ..... four feet is so out of proportion that it would never look, it will never be recognized as an authentic fence of restoration because the fence is not proportional to what it should be. Three feet is what they used in Victorian times and they are all over the place down there.... You are making a mistake if you think a forty inch fence is going to be proper for that house.

The Commission Director acknowledged that R1.8 of the Rehabilitation Standards for Historical Properties is a guideline and not mandatory, but it was a guideline for a reason and the Commission would have to articulate cause before deviating from it. The Commission Chairman cautioned Cowan that it was apparent he had two votes against him,[4] and in light of that, it was

---

that scale was an important issue and that the fence that was there in the past was probably smaller than the one proposed by Cowan).

**3.** R1.8 provides that new fences built in side yards, backyards, or along alleys can be "pri-

vacy fences" that are higher (under 72 inches).

**4.** As noted, Cowan had been made aware that he needed all five commissioners present to vote yes on a motion to grant his application.

advisable for him to defer his application for another month when more commissioners were present. Cowan replied, "If you want to vote against me, I'll take an appeal. I'm an attorney and I am putting my fence up." A motion was made to approve Cowan's proposed 48–inch fence, and three of the commissioners present voted for it. Two voted against it, the motion failed, and the application was denied.

On April 5, 2011, the Commission sent Cowan a letter setting forth the Commission's decision to deny his application, as well as the specific basis for the denial.[5] The record also contains an April 20, 2011 letter from the Commission indicating that Cowan went ahead and installed a fence "significantly higher" than the 40 inches permitted, in spite of the Commission's decision and the lack of a permit.

Cowan filed a Petition for Review of the Commission's decision in Pulaski County Circuit Court, Fifth Division, on April 29, 2011, pursuant to the Arkansas Administrative Procedures Act and the Capitol Zoning District Act.[6] The circuit court held a hearing on November 4, 2011, and reversed the Commission, finding that its decision to deny Cowan's application based on R1.8 was arbitrary and capricious. The order reversing the Commission was entered on November 22, 2011. The Commission filed a timely notice of appeal on December 15, 2011.

### The Authority of the Commission

The General Assembly created the Capitol Zoning District Commission[7] to preserve the dignity of[8] and to coordinate physical development in[9] certain Little Rock areas, including an area surrounding the Governor's Mansion where Cowan's residence is located.[10] The Commission has the authority to adopt a comprehensive master zoning plan, and has exclusive authority over the zoning and regulation of the utilization of all property within the Capitol Zoning District.[11] Following adoption of the master zoning plan, the Commission has the authority to approve or disapprove the location and design of any improvements to be placed upon any land in the district, and no improvements may be placed upon any land in the district unless the design and proposed location shall be approved by the Commission.[12] Such improvements include, but are not limited to, "buildings, including additions and alterations, parking lots and facilities, and all other construction whatsoever...."[13] After the adoption of the master zoning plan, "no improvement of any nature nor any change of land use shall commence within the district without a permit issued by the Commission."[14] Clearly, these statu-

---

If even one voted no, the motion would fail and Cowan's application would be denied.

5. The letter cited R1.8 in its entirety, highlighting the relevant portion concerning fence height, and noted that "[t]he dissenting commissioners cited their concerns that the proposed height of the fence was out of scale with property's primary structure and not in keeping with the residential character of the surrounding neighborhood."

6. Ark.Code Ann. §§ 22–3–310 (Repl.2004), 25–15–212(b) (Repl.2002).

7. Ark.Code Ann. § 22–3–303 (Repl.2004).

8. Ark.Code Ann. § 22–3–305(b) (Repl.2004).

9. Ark.Code Ann. § 22–3–305(a) (Repl.2004).

10. Ark.Code Ann. § 22–3–302 (Repl.2004).

11. Ark.Code Ann. § 22–3–306(a) (Repl.2004).

12. Ark.Code Ann. § 22–3–306(b)(1) (Repl. 2004).

13. Ark.Code Ann. § 22–3–306(b)(2) (Repl. 2004).

14. Ark.Code Ann. § 22–3–306(c) (Repl.2004).

tory provisions establish the Commission's authority to approve or disapprove Cowan's proposed fence.

Cowan has argued, below and on appeal, that the Commission lacked authority to deny his application because R1.8, the Rehabilitation Standard cited as the basis for the Commission's decision, is not mandatory and enforceable as a rule; rather, it is merely ₈advisory, or a guideline. The circuit court agreed with Cowan and, although its opinion is not entirely clear on this point, appears to have concluded that because R1.8 does not expressly forbid fences over 40 inches high, the Commission lacked the authority to deny Cowan's application.[15] Cowan's argument and the circuit court's finding both misframe the issue. The Rehabilitation Standards are historical-preservation guidelines used by property owners in determining how to renovate and maintain their properties. They are also guidelines used by the Commission in evaluating requests to add to or change properties in the district, and they have been adopted as regulations in the Arkansas Administrative Code.[16] A preface to the Rehabilitation Standards states their purpose and function as follows:

> Change is a sign of economic health and confidence in Little Rock's future. . . . However, the character of change must be managed to assure that the heritage of Arkansas as represented in these special areas is protected and that the urban framework will support and enhance the quality of life for residents and visitors.

Historic buildings should be treated with respect, and additions and other new buildings should strengthen the design context. If the imprint of new construction is to be positive, thoughtful consideration must be given to each change in the built fabric of the community.

Uncontrolled demolition, alteration and insensitive new construction can irreparably alter the character of the area. Once lost, the ambience of the Mansion and Capitol Areas cannot be recaptured with any sense of authenticity.

₉These design standards therefore are intended to guide the character of change such that the citizens of Arkansas will derive the maximum benefit of the Capitol and Mansion Areas and their environs.

To be sure, some of the Rehabilitation Standards are more flexible than others: some give direct commands,[17] whereas others encourage certain choices.[18] R1.8 is clearly one of the latter, stating what new fences "should" look like and "usually" are like. A plain reading of R1.8 is that it describes not a hard-and-fast requirement, but a preference as to how the standard set forth in R1.8—"[a] new fence should be in character with those seen historically"— should be met. The Commission may or may not adhere to that preference when evaluating a particular application; hence, the statement that front-yard fences are "usually" less than 40 inches and that scale "should" be maintained. It is clear to us that this language gives the Commission

---

**15.** The circuit court states in its opinion, "The Commission could have easily written R1.8 to read that 'A fence that defines a front yard shall be less than 40 inches. Absent proof that the forty-inch height limitation for such a fence is per se unreasonable, the Commission would have been justified in denying Cowan's application unless it found justification for granting some exception to that requirement."

**16.** Ark. Admin. Code 034.00.2.

**17.** For example, R1.7 states, "Preserve original fences."

**18.** R2.1 provides that masonry features "that define the overall historic character . . . *should* be preserved." (Emphasis added).

some latitude, some *discretion,* to apply the standard/guideline to the qualities and history of an individual property. In this case, it reflects the Commission's discretion to determine whether Cowan's proposed 48–inch fence maintained the appropriate scale and historical character, or whether a lower fence should be required.

Standing alone, R1.8 (and the rest of the Rehabilitation Standards) does not grant or deny permission for a homeowner to build a new fence around his house; rather, the homeowner must apply to the Commission for a permit, and the Commission has the power to approve or disapprove the proposed construction.[19] If the circuit court's conclusion—that the Commission could only deny Cowan's application if R1.8 expressly prohibited fences over 40 inches high—is correct, that means the Commission has no discretion to apply its own historic-preservation standards and guidelines to individual properties; rather, there must be a "one size fits all" rule. We decline to restrict the Commission's discretion in such a way.

### Substantial Evidence

■ Appellant argues that there was substantial evidence to support the Commission's decision to deny Cowan's application to install a 48–inch fence. We agree.

■ The standard of review regarding administrative decisions is well developed. Judicial review of the Commission's decision is governed by the Arkansas Administrative Procedure Act. The appellate court's review is directed not toward the circuit court, but toward the decision of the agency,[20] because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting them.[21] As with all appeals from administrative decisions under the Administrative Procedure Act, the appellate court may reverse the Commission's decision if it concludes that it is not supported by substantial evidence or is arbitrary, capricious, or characterized by an abuse of discretion.[22]

■ In determining whether an administrative decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[23] To establish an absence of substantial evidence to support the decision, the petitioner must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded men could not reach its conclusion.[24] The question is not whether the testimony would have supported a contrary finding, but whether it supports the finding that was made.[25] We give the evidence its strongest probative force to support the administrative decision.[26]

■ The petitioner has the burden of proving that there is an absence of sub-

19. *See* Ark.Code Ann. § 22–3–306(b), (c) (Repl.2004).

20. *Barnes v. Ark. Dep't of Fin. & Admin.,* 2012 Ark. App. 237, 419 S.W.3d 20 (citing *Chandler v. Ark. Appraiser Licensing and Certification Bd.,* 2011 Ark. 519, 2011 WL 6091354).

21. *Id.; Williams v. Ark. State Bd. of Physical Therapy,* 353 Ark. 778, 120 S.W.3d 581 (2003).

22. *Cass v. Ark. Dep't of Human Servs.,* 2012 Ark.App. 323, 2012 WL 1608586; Ark.Code Ann. § 25–15–212(h)(5), (6) (Repl.2002).

23. *Reed v. Arvis Harper Bail Bonds, Inc.,* 2010 Ark. 338, 368 S.W.3d 69 (2010).

24. *Id.* (citing *Williams v. Scott,* 278 Ark. 453, 647 S.W.2d 115 (1983)).

25. *Id.*

26. *Id.*

stantial evidence.[27] In this case, Cowan has not demonstrated that the proof before the Commission was so nearly undisputed that fair-minded men could not have denied his application. The decision to deny the application and the basis thereof were clearly stated in the record. The Commission staff representative stated, and one commissioner later noted, at the hearing that the property is one of the most historic residences in all of Arkansas. The commissioners believed that the pictures in the staff report show that a 40–inch–high fence is in character with a fence historically associated with the house; namely, a 1909 photograph of the property |12showing a fence that is low to the ground. The report of the Commission staff recommended that Cowan's fence be limited to 40 inches in height, based on the recommendations of R1.8, and the Design Review Committee and Mansion Area Advisory Committee both agreed with and adopted that recommendation. Moreover, Cowan at one point acknowledged that other houses around his still had their original fences, and those fences were 36 inches high. We note also that the very existence of R1.8 as a standard or guideline adopted by the Commission is evidence that there was some basis or rationale for denying Cowan's application.

Although Cowan showed slides of various properties in the general area that had fences higher than four feet, one commissioner distinguished those properties from Cowan's historical residence by pointing out that they were businesses, had higher fences in side or back yards (not facing the street, as Cowan's would be), or were grandfathered in. Cowan argues on appeal that the Commission should have presented additional, more solid "proof" that a 48–inch fence would not be appropriate for his residence under R.1.8. However, the decisions the Commission is tasked with making do not lend themselves to the kind of proof Cowan seeks. The determinations made by the Commission are inherently aesthetic in nature: such assessments are ultimately governed by opinion, not proof, and are inescapably grounded in discretion.

For example, the Commission's rule concerning permit approval procedures, which has been adopted as a regulation at Arkansas Administrative Code 034.00.4–2–105, provides |13that before a Design Review Permit may be issued for a structure visible from the public right of way,

> the proposed construction shall be reviewed for its appropriateness in historical style in the context of adjoining or neighboring structures; and its consistency with the goals of the Commission's Master Plan and Design Standards by the Commission's Design Review Committee, which shall make a recommendation to the Commission.

This describes a decision-making process that boils down to the visual assessment of a proposed change against the appearance, history, and qualities of a particular property and its surrounding neighborhood, using certain standards as a guide. In this case, the record clearly shows that this process occurred and, while three commissioners felt that Cowan's proposed 48–inch fence was appropriate, two commissioners believed it was not. In other words, there was a difference of opinion. However, the opinion of the two voting against Cowan's proposal was based on substantial evidence, as described above. Even if there was also substantial evidence supporting the opinion of the three commissioners who voted in Cowan's favor, that would not factor into our review.[28] We will not sub-

---

27. *McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999).

28. The question before us is not whether testimony would have supported a contrary finding, but whether it would support the finding

stitute our own judgment and discretion for that of an agency.[29]

The fact that the Commission members present at Cowan's hearing split 3–2 further demonstrates that the evidence was not so nearly undisputed that fair-minded men could not have reached the Commission's conclusion. On the contrary, it indicates that reasonable minds could either deny or grant Cowan's application. More importantly, however, the record contains relevant evidence adduced during the hearing that a reasonable mind might accept as adequate to support the Commission's decision. Therefore, we reverse the circuit court.

### Arbitrary and Capricious

■ The circuit court found the Commission's decision arbitrary and capricious because the Commission failed to present evidence "proving" that the 48–inch fence sought by Cowan violated any provision of the Rehabilitation Standards when the dimensions of his property and house are considered. Rather, the circuit court believed that the Commission applied R1.8 as a requirement "whenever the Commission wants to make it so and for whatever purposes it chooses to make it [sic] so," and concluded that "[n]othing in the record shows that the Commission has a standard for exercising its discretion."

We do not agree. It is undisputed that the standard used by the Commission was R1.8, which recommends precisely what the Commission ended up requiring. The Commission also based its decision on the recommendation of its own staffs report; the recommendation of two other committees dedicated to ensuring historic preservation in the area; evidence that Cowan's property and surrounding properties traditionally had fences at or under 40 inches in height; and the individual assessments of commissioners who determined that the fence proposed by Cowan was out of keeping with the house's scale and historical character.

It is true that this exercise of discretion cannot be captured with a mathematical algorithm that predicts for homeowners exactly what the Commission will decide when it considers an application. However, that does not mean the Commission's decision in this case had no rational basis.[30] As set forth above, substantial evidence supported the two negative votes that resulted in the denial of Cowan's application. Our supreme court has stated that the requirement that administrative action not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence.[31] When an agency's decision is supported by substantial evidence, therefore, it automatically follows that it cannot be classified as unreasonable or arbitrary.[32] Because the Commission's decision was supported by substantial evidence, it was not arbitrary

that was made. *Williams v. Ark. State Bd. of Physical Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003).

**29.** *Wright v. Ark. State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

**30.** An administrative decision can only be reversed as arbitrary and capricious when it is not supportable on any rational basis, not simply because the reviewing court would have acted differently. *Barnes v. Ark. Dep't of*

*Fin. & Admin.*, 2012 Ark. App. 237, 419 S.W.3d 20.

**31.** *Id.* (citing *Beverly Enters.-Ark., Inc. v. Ark. Health Servs. Comm'n*, 308 Ark. 221, 824 S.W.2d 363 (1992)).

**32.** *Lamar Co., LLC v. Ark. State Highway & Transp. Dep't*, 2011 Ark. App. 695, 386 S.W.3d 670 (citing *Collie v. Ark. State Med. Bd.*, 370 Ark. 180, 258 S.W.3d 367 (2007)).

and capricious. We reverse the circuit court.

Reversed.

WYNNE and HOOFMAN, JJ., agree.