N. MARK KLAPPENBACH, Judge
Appellees Marion and Vernita Humphrey (collectively "Humphrey") requested permission to replace wooden steps with brick steps on the front of their historic residence located at 2115 South Arch Street in downtown Little Rock. Appellant Capitol Zoning District Commission ("Commission") denied the application in an administrative-agency proceeding. Humphrey appealed to the Pulaski County Circuit Court, which reversed the Commission's decision. The Commission appeals, arguing that the circuit court order should be reversed. The Commission argues that its administrative decision finding that the brick steps did not conform to the applicable Rehabilitation Standards and denying Humphrey's request was supported by substantial evidence, was not arbitrary or capricious, and should be reinstated. Because there was substantial evidence to support the Commission's decision, we reverse the circuit court.
Review of administrative-agency decisions, by both the circuit court and the appellate courts, is limited in scope. Ark. State Highway & Transp. Dep't v. Lamar Advantage Holding Co. , 2011 Ark. 195, 381 S.W.3d 787. The standard of review to be used by both courts is whether there is substantial evidence to support the agency's findings. Id. The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. Id. When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. Id. Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture.
*22 Ark. Contractors Licensing Bd. v. Pegasus Renovation Co. , 347 Ark. 320, 64 S.W.3d 241 (2001).
To determine whether a decision is supported by substantial evidence, the record is reviewed to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Ark. State Racing Comm'n v. Ward, Inc. , 346 Ark. 371, 57 S.W.3d 198 (2001). When reviewing the evidence, the appellate court gives it its strongest probative force in favor of the agency. Id. The issue is not whether the evidence supports a contrary finding but whether it supports the finding that was made. Id. If there is substantial evidence to support even one basis for denial, this court must affirm the agency's decision. Ark. State Highway & Transp. Dep't v. Ram Outdoor Advertising , 2015 Ark. App. 713, 479 S.W.3d 51. It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. Id.
The more precise law on this particular agency follows. Our court explained the creation and function of the Capitol Zoning District Commission in Capitol Zoning District Commission v. Cowan , 2012 Ark. App. 619, 429 S.W.3d 267. In the Cowan appeal, the specific issue was a request to build a fence at the Cowan residence at a certain height, not a request to replace front steps. Nonetheless, the Cowan decision explained the Commission's overall purpose and guiding principles:
The General Assembly created the Capitol Zoning District Commission to preserve the dignity of and to coordinate physical development in certain Little Rock areas, including an area surrounding the Governor's Mansion where Cowan's residence is located. The Commission has the authority to adopt a comprehensive master zoning plan, and has exclusive authority over the zoning and regulation of the utilization of all property within the Capitol Zoning District. Following adoption of the master zoning plan, the Commission has the authority to approve or disapprove the location and design of any improvements to be placed upon any land in the district, and no improvements may be placed upon any land in the district unless the design and proposed location shall be approved by the Commission. Such improvements include, but are not limited to, "buildings, including additions and alterations, parking lots and facilities, and all other construction whatsoever...." After the adoption of the master zoning plan, "no improvement of any nature nor any change of land use shall commence within the district without a permit issued by the Commission." Clearly, these statutory provisions establish the Commission's authority to approve or disapprove Cowan's proposed fence.
....
The Rehabilitation Standards are historical-preservation guidelines used by property owners in determining how to renovate and maintain their properties. They are also guidelines used by the Commission in evaluating requests to add to or change properties in the district, and they have been adopted as regulations in the Arkansas Administrative Code. A preface to the Rehabilitation Standards states their purpose and function as follows:
Change is a sign of economic health and confidence in Little Rock's future ... However, the character of change must be managed to assure that the heritage of Arkansas as represented in these special areas is protected and that the urban framework will support and enhance the quality of life for residents and visitors.
*23 Historic buildings should be treated with respect, and additions and other new buildings should strengthen the design context. If the imprint of new construction is to be positive, thoughtful consideration must be given to each change in the built fabric of the community.
Uncontrolled demolition, alteration and insensitive new construction can irreparably alter the character of the area. Once lost, the ambience of the Mansion and Capitol Areas cannot be recaptured with any sense of authenticity.
These design standards therefore are intended to guide the character of change such that the citizens of Arkansas will derive the maximum benefit of the Capitol and Mansion Areas and their environs.
To be sure, some of the Rehabilitation Standards are more flexible than others: some give direct commands, whereas others encourage certain choices.
Cowan , 2012 Ark. App. 619, at 6-10, 429 S.W.3d at 271-73 (internal footnotes omitted). Thus, the Rehabilitation Standards give the Commission "the power to approve or disapprove the proposed construction." Id. at 9, 429 S.W.3d at 273.
Arkansas Code Annotated section 22-3-306(b) (Repl. 2016) undergirds the Commission's authority:
(1) After the adoption by the commission of the comprehensive master zoning plan, the commission shall have the authority to approve or disapprove the location and design of any improvements to be placed upon any land within the district, and no improvements shall be placed upon any land within the district unless the design and proposed location shall be approved by the commission.
(2) Such improvements shall include, but not be limited to, buildings, including additions and alterations[.]
The provisions of the code relating to the Capitol Zoning District "shall be construed liberally." Ark. Code Ann. § 22-3-301(a). "The determinations made by the Commission are inherently aesthetic in nature: such assessments are ultimately governed by opinion, not proof, and are inescapably grounded in discretion." Cowan , 2012 Ark. App. 619, at 12, 429 S.W.3d at 274.
With these parameters of law and appellate review in mind, we examine the evidence presented in the administrative hearing. Humphrey purchased the house at 2115 South Arch Street in 1989. It is located in the area that includes the Governor's Mansion and is encompassed within the Capitol Zoning District. The Arch Street house was designed by architect Charles Thompson and built circa 1906.
In 1989, the house was in substantial disrepair and was burned out. Humphrey restored its condition. The front steps were concrete at the time Humphrey purchased the house, but Humphrey asked for and was granted permission in 1989 to install wooden front steps. Humphrey repaired the wooden steps after they were damaged by a tornado in 1999. In the fall of 2015, Humphrey replaced the wooden steps with brick steps but did not obtain a permit or authorization from the Commission before doing so.
On the morning of October 13, 2015, the Commission became aware of construction at the Arch Street house. That same morning, the Commission sent an email to Humphrey, stating that because the house was located in the Governor's Mansion area of the Capitol Zoning District, "all exterior changes have to be approved and permitted." That same day, Humphrey submitted a written application to the Commission, describing the proposed work *24 on the house as "painting, repair leak in roof, steps replaced." The painting and roof repairs were immediately approved and permitted at the staff level. Commission staff informed Humphrey that the replacement of the steps would have to be considered by the Commission. The matter was considered at a hearing before the Commission in November 2015.
At the hearing, the executive director of the Commission, Boyd Maher, stated that this was an after-the-fact application review because Humphrey had already installed the brick steps without a permit. Maher noted that there would be no problem granting the permit application if Humphrey had used concrete (as it was originally) or wood (as had been permitted in 1989) for the steps; the problem was that Humphrey changed the steps to brick. Maher recommended that the application be denied, noting that preservation of the architectural details required that homeowners avoid adding elements that were not part of the historic design.[1]
A staff report was made part of the administrative record. The report cited to the Rules and Master Plan of the Commission, Section 2-105.C.1.(a), which mandates that any major modification to a residence within the historical district be preceded by a certificate of appropriateness. This Section defines "major modifications" as those that "substantially alter, from the public right-of-way, the appearance of a structure or site feature." The report also cited Section 4-205, concerning porches, noting that the Commission's policy is to maintain a home's porch if it is a "primary character-defining feature of a front facade," which includes "steps." Rehabilitation Standard R5.4 was quoted, which states, "If porch replacement is necessary, reconstruct it to match the original in form and detail." The report further cited the Commission's Standard for Historic Details in R.6.2 that states, "Avoid adding elements or details which were not part of the historic design." Archive photographs showed that the wooden steps that had been on the house were painted a bluish color to match the wooden porch, whereas the new red brick steps did not match the wooden porch. The Report recited that no other house on Arch Street had brick steps; that the Design Review Committee had voted 3 to 1 to recommend denial of Humphrey's application; and that the Mansion Area Advisory Committee had voted 10 to 1 to recommend denial of Humphrey's application.
Humphrey testified that the house originally had concrete steps, that those were replaced with wooden ones in 1989, that brick steps were safer to traverse than wooden ones (especially for his elderly mother), that brick was more durable and economical over time, and that there were other houses in the area that had brick steps. Humphrey noted that the wooden steps had to be replaced or repaired three or four times since 1989. Humphrey argued that using brick for the front steps did not change the character of the house and that there was no specific rule prohibiting brick porch steps.
One commissioner commented that Humphrey could have used nonskid paint on the wood steps to provide more traction[2] and that wood was a more economical material to use than brick. Other Commissioners noted that Humphrey did not *25 seek a permit prior to constructing these brick steps.
At the conclusion of the hearing, by a vote of 6 to 3, the commissioners denied Humphrey's application. The Commission issued a formal written notification and order denying the application to install the brick steps. The Commission found that the wooden steps were a "character defining feature of the house," that replacing the wooden steps with brick was "not consistent with the applicable review criteria," and that "Rehabilitation Standards 5.4 and 6.2 should not be waived because repairing or replacing the wood steps would not constitute an economic hardship." Humphrey appealed to circuit court, which reversed the Commission's decision, leading to the present appeal.
We must review the agency's decision in light of the Commission's authority to approve or disapprove of the location and design of any improvements to be placed upon any land in the district, which includes any and all construction. Rehabilitation Standard for Historic Properties R6.1 sets forth a standard of avoiding the removal or alteration of "significant architectural details," which includes "porches." Standard R6.3 sets forth a standard of protecting and maintaining "significant stylistic elements." Standard R6.5 recites the standard that a homeowner "minimize intervention with historical elements," "maintain character-defining features," "repair only those features that are deteriorated," and "replace only those features that are beyond repair." Standard R6.8 states that homeowners should replace missing features with the "same kind of material as the original" or use a substitute that appears to be the same "form and design" to "match the original in scale, proportion, finish, and appearance." With these guiding standards, the Commission exercised its discretion to deny this application in order to maintain the previously approved wooden porch steps, in keeping with the historical character and defining feature of the front porch of this house.
"The question is not whether the evidence would have supported a contrary finding, but rather whether it supports the finding that was made." Dep't of Health & Human Servs. v. R.C. , 368 Ark. 660, 668, 249 S.W.3d 797, 804 (2007). Our function is to determine if there was a substantial basis on which the Commission could rest its decision to deny Humphrey's application. "The determinations made by the Commission are inherently aesthetic in nature: such assessments are ultimately governed by opinion, not proof, and are inescapably grounded in discretion." Cowan , 2012 Ark. App. 619, at 12, 429 S.W.3d at 274. We ordinarily uphold an agency's interpretation of its own rule unless it is clearly wrong. Northport Health Servs. of Ark., LLC v. Ark. Dep't of Human Servs. , 2009 Ark. 619, 363 S.W.3d 308. Given the extent of the authority vested in the Commission and the standard of appellate review, we hold that the Commission's decision is supported by substantial evidence of record.
Because we hold that there was substantial evidence to support the agency's decision, it automatically follows that it cannot be classified as unreasonable or arbitrary. Cowan, supra. Accordingly, we reverse the circuit court. As a consequence, the administrative agency's decision is reinstated.
Reversed.
Vaught and Murphy, JJ., agree.

Maher cited Rehabilitation Standard for Historic Properties R5.4 and R6.2.

At the hearing, Humphrey requested permission to install railing, and Maher stated that those were routinely permitted by staff. One commissioner said to Humphrey, "You can get a rail."